STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Brian A. HIGGINBOTHAM, Defendant-Appellant.

Supreme Court

*No. 89–0884–CR. Argued April 24, 1991.—Decided June 24, 1991.*

(Also reported in 471 N.W.2d 24.)

For the plaintiff-respondent-petitioner there were briefs by *Sharon Ruhly,* with whom on the briefs was *Donald J. Hanaway,* attorney general (past) and *James E. Doyle,* attorney general (present) and oral argument by *Sally Wellman.*

For the defendant-appellant there was a brief by *Charles Bennett Vetzner* and *Suzanne Hagopian,* assistant state public defenders and oral argument by *Suzanne Hagopian.*

WILLIAM A. BABLITCH, J. The State of Wisconsin (State) seeks review of a court of appeals' decision which reversed the circuit court's judgment convicting the defendant, Brian J. Higginbotham (Higginbotham), on his no-contest plea to the charge of arson, party to the crime. The court of appeals held that evidence seized in the search of Higginbotham's home

and automobile should have been suppressed because the warrant-issuing judge did not have a substantial basis for concluding that probable cause existed to issue the warrant. In view of our strong preference for search warrants and the great deference we accord to the issuing judge's determination of probable cause, we conclude that the issuing judge had a substantial basis for finding probable cause to issue the warrant to search the house in which Higginbotham was living and his automobile. Accordingly, we reverse the decision of the court of appeals and affirm Higginbotham's judgment of conviction.

A procedural issue is also raised: whether citing an unpublished court of appeals' decision in a petition to review violates sec. 809.23(3), Stats., when that citation is not used for the purpose of setting forth precedent or authority, but to demonstrate that there is a decisional conflict between two court of appeals' districts. We conclude that sec. 809.23(3) does not prohibit the citing of unpublished court of appeals' decisions for this purpose.

The facts are as follows. On February 21, 1988, Captain Dennis Kussmann of the Waupaca County Sheriff's Department responded to a call from the residence of Art Toppe regarding burn marks found on the outside of Toppe's home. After interviewing the occupants of the Toppe residence, examining the burn marks and the surrounding area, and conducting further investigation regarding the suspected arson, Kussmann applied to Waupaca County Circuit Court Judge John P. Hoffmann for the issuance of a search warrant to search a residence occupied by Donna Frasier, Brian Higginbotham and Miles Carpenter, and to search a red Ford Fairmont located at the residence. After reviewing Kussmann's affidavit and listening to his testimony, Judge Hoffmann issued the warrant, finding that there was probable cause to believe that evidence of the arson

could be found at the residence of Donna Frasier and in a red Ford Fairmont with yellow Wisconsin license plates at that location.

The following facts were set forth in Kussmann's affidavit. Chester Wedde, who rented a room from Toppe, told Kussmann that he had smelled gas around the Toppe residence just before noon on February 21, 1988. After investigating the source of the gas odor, Wedde observed a large scorched area on the north side of Toppe's home and another large scorched area on the front porch.

George Babino, another tenant of Toppe's, told Kussmann that in the early morning hours of that day, February 21, 1988, he had twice been awakened by barking dogs. After being awakened the second time, at about 2:30 or 3:00 a.m., Babino looked out his window and observed a vehicle with its lights on going very slowly towards Highway 156. Donna Frasier's residence is located on Highway 156. Babino also reported that shortly before Kussmann arrived at the Toppe residence, he observed Donna Frasier, Brian Higginbotham, and another individual known to Babino as Miles, drive very slowly by the Toppe residence in a red Ford Fairmont with yellow license plates.

In addition, Kussmann's affidavit stated that Babino had provided the following information:

> that George Babino and Donna Frasier had previously lived [sic] before separating in September, 1987; that he and Donna Frasier had subsequent disagreements over child custody and visitation, and about Donna Frasier living with the above mentioned two male subject [sic]; that George Babino believe [sic] Donna Frasier, Brian Higginbotham, and 'Miles' might be attempting to get even with him; that in November, 1987, George Babino found a five gallon

square blue container containing a substance which appeared to him to be like turpentine, and placed said container at that time at Donna Frasier's residence on Highway 156; and that said container and its contents should still be at Donna Frasier's residence on Highway 156. Further, your affiant deems George Babino reliable as a citizen witness.

Kussmann's affidavit also stated that in the opinion of Kussmann and Assistant Clintonville Fire Chief Donald Krueger, a flammable liquid had been thrown against the Toppe residence in two separate places and ignited. During Kussmann's and Krueger's investigation of the area, they collected melted snow, charred soil, two burned matches, and wood and paint samples from the scorched north side of the Toppe residence. In addition, Kussmann discovered one yellow right-handed work glove with a burn spot and red stripes at the end of Toppe's driveway. Photographs of two separate sets of shoe prints left in the snow at Toppe's residence were also taken by Kussmann. Kussmann also stated in his affidavit that he had observed the car described by Babino, a red Ford Fairmont with yellow Wisconsin license plates, at the Frasier residence on Highway 156.

After reviewing the above information contained in Kussmann's affidavit, Judge Hoffmann heard additional testimony from Kussmann before issuing the warrant. Kussmann testified that Babino told him that Frasier and Babino had lived together for nineteen years before separating in November, 1987. Babino also told Kussmann that he had reported Frasier to the welfare department to inform them that Frasier was violating her conditions of welfare by not notifying the department that Higginbotham and Carpenter were staying at her home.

Based on the affidavit and testimony of Captain Kussmann, Judge Hoffmann found that there was prob-

able cause to believe that things used in the commission of the crime of arson, such as would constitute evidence of the arson, would be located at Frasier's residence and in the red Ford Fairmont with yellow Wisconsin license plates located at that residence.

Judge Hoffmann stated that the items specifically authorized for search "will be the one 5-gallon square blue container containing a turpentine-like substance, a container or containers containing other flammable liquids, one single left yellow workman's glove with red stripes, and two pairs of shoes having soles which match those photographed by Cpt. Kussmann . . .."

The warrant was executed on March 1, 1988. During the search of Frasier's home, the officers seized a two gallon gas can, petroleum residue from the snow in Frasier's driveway, two pairs of hiking boots, two pairs of yellow chore gloves, and two State of Washington license plates found in a garbage bag on Frasier's property. The treads of one pair of boots, those worn by Miles Carpenter who was present during the search, matched one of the sets of boot prints photographed at the Toppe residence by Captain Kussmann.

After Frasier and Carpenter were taken to the police station and read their rights, each gave a statement. After taking Frasier's statement, which implicated both Carpenter and Higginbotham, officers arrested Higginbotham at work and impounded his car, the red Ford Fairmont described in the warrant. The search of the car resulted in the seizure of a two gallon gas can and one yellow left-handed chore glove. The boots Higginbotham was wearing when he was arrested were also seized. The treads of these boots matched the other set of boot prints photographed by Captain Kussmann at the Toppe residence.

On April 8, 1988, Higginbotham moved to suppress the evidence obtained by the police in the searches of the Frasier residence and of his automobile. Higginbotham also moved to suppress the statements made by Frasier, Carpenter, and himself as "fruit of the poisonous tree." Following Carpenter's suppression hearing on May 9, 1988, and Higginbotham's suppression hearing on May 12, 1988, the circuit court denied the motions to suppress in a written decision filed July 7, 1988. The court did, however, find that the seizure of the license plates and the two pairs of yellow chore gloves from the Frasier residence went beyond the scope of the warrant and that these items should be suppressed.

Subsequently, Higginbotham pled no contest to one count of arson to a building, party to a crime, pursuant to secs. 943.02 and 939.05, Stats. Higginbotham appealed his conviction. The court of appeals held that the affidavit and testimony of Kussmann did not establish probable cause for the issuance of the warrant because the facts did not provide a substantial basis for the issuing judge to conclude that the items sought would be in either the Frasier residence or in Higginbotham's car. Accordingly, the court of appeals concluded that the search was invalid and the evidence was inadmissible. The court remanded the case to the circuit court for determination of whether evidence that may have been obtained as a fruit of the illegal search should be suppressed. In addition, the court held that it was without authority to adopt the *Leon* good faith exception to the exclusionary rule. *See United States v. Leon,* 468 U.S. 897 (1984).

The State petitioned for review, asserting that the warrant was based on probable cause, and that even if it was not, this court should adopt the *Leon* good faith exception to the exclusionary rule. In its petition, the

State cited an unpublished court of appeals' decision, *State v. Carpenter,* which affirmed the conviction of Higginbotham's co-perpetrator, Miles Carpenter, after finding that the issuing judge had probable cause to issue the search warrant at issue in this case. We granted the State's petition for review, but on our own motion ordered that all references to the unpublished court of appeals' decision in the State's petition be struck pursuant to sec. 809.23(3), Stats., which limits the citing of unpublished court of appeals' decisions. The State requested permission to amend its petition for review and to brief the issue of whether citation of unpublished decisions of the court of appeals violates sec. 809.23(3) when that citation is not used for the purpose of setting forth precedent or authority. We granted the State's request and issued an order permitting the parties to brief that issue.

The central issue in this case is whether the affidavit and testimony of Captain Kussmann set forth sufficient facts to support a finding of probable cause for the issuance of the search warrant to search the Frasier residence and Higginbotham's automobile for evidence of the arson committed at the Toppe residence. We conclude that the warrant-issuing judge had a substantial basis for finding that there was probable cause to issue the warrant to search the Frasier residence and Higginbotham's automobile for the items specified in the warrant. Accordingly, we reverse the decision of the court of appeals and affirm Higginbotham's judgment of conviction. Because we conclude that there was probable cause for the issuance of the warrant, we do not consider the issue of whether this court should adopt the "good faith" exception to the exclusionary rule established by the United States Supreme Court in *Leon.*

A search warrant may issue only on a finding of probable cause by a neutral and detached magistrate. *State v. DeSmidt,* 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990); *Bast v. State,* 87 Wis. 2d 689, 692, 275 N.W.2d 682 (1979). We accord great deference to the warrant-issuing judge's determination of probable cause and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause. *DeSmidt,* 155 Wis. 2d at 132.

In reviewing whether there was probable cause for the issuance of a search warrant, we are confined to the record that was before the warrant-issuing judge. *DeSmidt,* 155 Wis. 2d at 132; *Bast,* 87 Wis. 2d at 692. The warrant-issuing judge must be "apprised of 'sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched.' " *DeSmidt,* 155 Wis. 2d at 131–32 (quoting *State v. Starke,* 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978)). The duty of the reviewing court is to ensure that the magistrate had a substantial basis for concluding that the probable cause existed. *Id.* at 133.

The quantum of evidence necessary to establish probable cause to issue a search warrant is less than that required to support bindover for trial at the preliminary examination. *Ritacca v. Kenosha County Court,* 91 Wis. 2d 72, 77, 280 N.W.2d 751 (1979); *Bast,* 87 Wis. 2d at 693. "Probable cause is not a technical, legalistic concept but a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *State v. Petrone,* 161 Wis. 2d 530, 547–548, 468 N.W.2d

989

676–682 (1991). The duty of the judge issuing the warrant is to make:

> 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' *DeSmidt,* 155 Wis. 2d at 131 (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

The deferential standard of review accorded to the warrant-issuing judge's finding of probable cause is " 'appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.' " *DeSmidt,* 155 Wis. 2d at 133 (quoting *Massachusetts v. Upton,* 466 U.S. 727, 733 (1984)). Accordingly, it is the established policy of this court that the resolution of doubtful or marginal cases regarding a warrant-issuing judge's determination of probable cause should be largely determined by the strong preference that law enforcement officers conduct their searches pursuant to a warrant. *See DeSmidt,* 155 Wis. 2d at 133; *State v. Starke,* 81 Wis. 2d 399, 411, 260 N.W.2d 739 (1978).

Searches conducted pursuant to a warrant are a more reliable safeguard against improper searches because the decision to search is made by a neutral magistrate who has the opportunity to make an informed and deliberate determination regarding the existence of probable cause, rather than by officers whose more hurried decisions may be influenced by the competitive nature of their work and their desire to discover evidence they suspect may be present at a given location. *See Starke,* 81 Wis. 2d at 411; *United States v. Ventresca,*

990

380 U.S. 102, 106 (1965); *United States v. Chadwick,* 433 U.S. 1, 9 (1977). By interposing the " 'orderly procedure' " of applying to a magistrate for a warrant, an opportunity is presented to prevent unjustified intrusions by law enforcement officers " 'before a deprivation of personal liberty occurs.' " 1 LaFave, *Search and Seizure* 549 (1987) (citations omitted). Furthermore, the procedure allows an impartial determination of the permissible scope of the search to be made before the police begin the search. Warrants are also preferred because a "warrant assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Chadwick,* 433 U.S. at 9. Deference to the warrant-issuing judge's decision is also appropriate because "[r]easonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause." *Leon,* 468 U.S. at 914.

To ensure that the use of warrants by police is not inhibited by an overly severe review of the warrant-issuing judge's determination of probable cause, we have stressed that:

> '[A]ffidavits for search warrants, . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
>
> 'Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to

perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner . . ..' *Starke,* 81 Wis. 2d at 410 (quoting *Ventresca,* 380 U.S. at 108).

The warrant-issuing judge's determination of probable cause cannot, however, be upheld if the affidavit provides nothing more than the legal conclusions of the affiant. To further the objectives behind the warrant requirement, the affidavit and testimony must provide a sufficient basis for the judge to make an informed determination that probable cause exists for the search.

With these precepts in mind, we turn to the issue in this case: whether the affidavit and testimony of Captain Kussmann provided a substantial basis for Judge Hoffmann's determination that there was probable cause to believe that evidence of the arson would be found at Donna Frasier's residence and in Higginbotham's red Ford Fairmont.

The record establishes that the warrant-issuing judge was justified in finding that the objects sought by the warrant were linked with the commission of the arson. It is beyond dispute that shoes matching the prints found in the snow at Toppe's property and the mate to the scorched right-handed work glove found on Toppe's property would constitute significant evidence in this case. There was also a reasonable probability that flammable liquid in the possession of the residents of the

Frasier home would establish a link between them and the arson.

The much more difficult question in this case is whether the warrant-issuing judge was apprised of sufficient facts to excite an honest belief in a reasonable mind that those objects named in the warrant would be found at the two locations named in the warrant. As the State and trial judge have acknowledged, the circumstances involved here present a close case. In view of the great deference we accord to searches conducted under the authority of a warrant, we conclude that the affidavit and testimony of Captain Kussmann provided a substantial basis for the issuing judge to determine that there was probable cause for the search. The motive the occupants of the Frasier residence had for causing or threatening harm to George Babino and their suspicious behavior near in time and location to the scene of the crime provided a sufficient basis for the issuing judge's determination of probable cause.

The defendant contends that the affidavit and testimony were insufficient to demonstrate any motive for the commission of the crime by the residents of the Frasier home. The defendant argues that "it is inexplicable why an attempt would be made to burn [Toppe's] house to settle a grudge with Babino." In addition, Higginbotham asserts that the affidavit indicates only that Babino, and not police, theorized that the suspects committed the crime to "get even." Higginbotham argues that this statement is nothing more than a conclusion that does not provide any facts to allow a magistrate to reach his or her own conclusion that there is probable cause to believe that the residents of the Frasier home committed the crime. Finally, the defendant argues that the fact that there were "disagreements" between Frasier

and Babino about her living arrangements suggests only that Babino has a motive for revenge.

We disagree. It was reasonable for the issuing judge to infer from the information presented to him that the suspects had a motive for committing the arson. Although Babino did not own the house that was burned, it was reasonable to infer that the fire may have been intended to cause physical harm to the residents of the house. The fire also could have been intended to serve as a threat of future harm to any of the residents of the Toppe home. Thus, the information provided a sufficient basis to believe that Babino may have been a target of the arson.

The information also provided an adequate basis for the judge to reasonably infer that Frasier, Higginbotham, and Carpenter wanted to "get even" with Babino. Contrary to the defendant's assertions, this theory could be reasonably inferred solely from the information provided by Babino without any reliance on Babino's statement that the suspects may have wanted to get even with him. The fact that Babino and Frasier had "disagreements" suggested that there was friction and possibly resentment between the parties regarding Frasier's living situation and with regard to child custody and visitation. Although Kussmann's testimony did not specify that Frasier was aware that Babino had reported her to the welfare authorities, it was reasonable to infer that Frasier could have learned or suspected that Babino was responsible for reporting her and would be angry at Babino for making the report.

In addition to having a motive to commit the arson, the suspicious behavior of the three suspects in driving very slowly past the Toppe house so soon after the arson could reasonably be construed as increasing the

probability that they were involved in some manner with the crime. As the circuit court observed in this case:

> While driving by very slowly may well constitute innocent behavior on the part of those three individuals, a detached and neutral magistrate could reasonably infer that those three individuals, with a possible motive, observed driving by the scene of an alleged arson or arsons on a County road prior to the police arrival would establish a reasonable nexus between the three individuals and the alleged arson or arsons.

 Having determined that there was sufficient evidence for a neutral judge to find probable cause that Frasier, Higginbotham, and Carpenter were involved in the arson, we must still determine whether there was a substantial basis for the issuing judge to find that there was probable cause that the evidence would be found at Frasier's residence and in Higginbotham's vehicle. *See, e.g., United States v. Freeman,* 685 F.2d 942, 949 (5th Cir. 1982) ("[T]he fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime.") *See also* LaFave, *supra,* at 547–48. We conclude that there was also a substantial basis for the issuing judge to conclude that there was a "fair probability" that evidence would be found at Frasier's residence and in the vehicle in which the three suspects were seen driving.

Under the circumstances of this case, it was reasonable to infer that the items sought might be found at the Frasier residence in view of the close connection all three suspects had to the residence. Because of their nexus to the home, the Frasier property was a likely storage or hiding place for the sought-after shoes, glove, and flam-

mable liquids that could link the suspects to the crime. These are items commonly kept at the home.

There was also probable cause to believe that evidence would be found in Higginbotham's car, which was observed in the Frasier driveway by Captain Kussmann and by Babino after the arson had been discovered. The car was a likely location for evidence because Babino's observation of a vehicle moving very slowly outside Toppe's rural home at 2:30 a.m. after he was awakened by dogs suggested that a car had been used in the commission of the arson.

As the State and the trial judge have acknowledged, this is a "close" case. The question, however, is not whether we would have found probable cause as an original matter. Kussmann's affidavit and testimony provided facts that amounted to more than a mere "hunch" or the bare recital of legal conclusions by the officer. Those facts indicated that the suspects had a motive for the crime and had engaged in suspicious behavior near in time and location to the scene of the crime. In view of our strong preference for warrants and the great deference we accord to the issuing judge's determination of probable cause, we conclude that Judge Hoffmann had a substantial basis for finding probable cause for issuance of the warrant. Accordingly, we reverse the decision of the court of appeals and affirm the warrant-issuing judge's finding that there was probable cause for issuing the search warrant.

We also address the issue raised by the State as to whether citing an unpublished court of appeals' decision in a petition for review violates sec. 809.23(3), Stats., when that citation is not for the purpose of setting forth precedent or authority. Both parties agree that sec. 809.23(3) is not intended to foreclose the citing of

unpublished court of appeals' decisions for purposes other than as precedent or authority. We hold that sec. 809.23(3) does not prohibit the citing of an unpublished court of appeals' decision in a petition for review when the citation is used to demonstrate that a court of appeals' decision is in conflict with another court of appeals' decision.

Section 809.23(3), Stats.,[1] by its express terms, only forbids the citation of unpublished opinions "as precedent or authority." Neither this court nor the Wisconsin statutes have previously defined "precedent or authority." In common legal usage, the citation of an opinion as "precedent" or "authority," refers to the practice of a party citing a prior judicial decision involving a similar question of law for the purpose of persuading the court to accept a particular legal position or to adopt a particular rule or principle of law. *See Black's Law Dictionary* 1176 (6th ed. 1990) (defining precedent as "[a]n adjudged case or decision of a court, considered as furnishing an example or authority for an identical or similar case afterwards arising or a similar question of law."); *Id.* at 133 (defining authorities as "[c]itations to . . . judicial decisions . . . made on the argument of questions of law . . . on the trial of causes before a court, in support of the legal position contended for, or adduced to fortify the opinion of a court . . . upon any question"). It is a well-recognized rule of statutory construction that non-technical words and phrases are to be construed according to their common and ordinary usage. *See Ervin v. City of*

---

[1] **809.23 Rule (Publication of opinions) . . .. (3)** An unpublished opinion is of no precedential value and for this reason may not be cited in any court of this state as precedent or authority, except to support a claim of res judicata, collateral estoppel, or law of the case.

*Kenosha,* 159 Wis. 2d 464, 483–84, 464 N.W.2d 654 (1991).

The State cited the unpublished opinion in this case in its petition for review in an attempt to demonstrate that there was a conflict between the decisions of two court of appeals' districts because the two districts had reached opposite conclusions on virtually identical facts that arose out of the same incident. The State argued that the two decisions constituted a conflict under sec. 809.62(1)(d), Stats.,[2] that meets one of our criteria for considering a petition for review. We conclude that it is not contrary to sec. 809.23, Stats., to cite an unpublished decision for this purpose because the citation is not being used to convince the court to accept the legal holding of the unpublished decision, but to alert this court to the "fact" of a conflict between the decisions of the court of appeals' districts. We agree with the state that it is appropriate to cite an unpublished court of appeals' decision in a petition for review to alert us that there is a decisional conflict between the court of appeals' districts.

*By the Court.*—The decision of the court of appeals is reversed.

---

[2] **809.62 Rule (Petition for review) (1)** . . . The following, while neither controlling nor fully measuring the court's discretion, indicate criteria that will be considered:

(d) The court of appeals' decision is in conflict with controlling opinions of the United States Supreme Court or the supreme court or other court of appeals' decisions.