STATE of Wisconsin, Plaintiff-Respondent,

v.

Jason KIPER, Defendant-Appellant-Petitioner.

Supreme Court

*No. 93–2997–CR.  Oral argument March 8, 1995.—Decided May 24, 1995.*

(Also reported in 532 N.W.2d 698.)

72

For the defendant-appellant-petitioner there were briefs and oral argument by *Mary E. Waitrovich,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *James E. Doyle.*

JANINE P. GESKE, J.  The petitioner, Jason Kiper (Kiper), seeks a review of an unpublished decision of the court of appeals, filed May 17, 1994, which affirmed a decision of the circuit court for Brown County, Susan E. Bischel, Circuit Judge. Kiper was arrested and convicted for possession with intent to deliver a controlled substance, in violation of § 161.41(1m)(h)1, Stats.[1] However, Kiper argues that his arrest and conviction were based upon evidence illegally seized at his home when a police officer sought to execute an arrest warrant for a third party, David J. Wanie (Wanie). According to Kiper, the evidence seized

---

[1] Section 161.41(1m)(h)1, Stats., provides:

**161.41  Prohibited acts A—penalties. . . .**

**(1m)**  Except as authorized by this chapter, it is unlawful for any person to possess, with intent to manufacture or deliver, a controlled substance. Intent under this subsection may be demonstrated by, without limitation because of enumeration, evidence of the quantity and monetary value of the substances possessed, the possession of manufacturing implements or paraphernalia, and the activities or statements of the person in possession of the controlled substance prior to and after the alleged violation. Any person who violates this subsection with respect to:

. . .

(h)  Tetrahydrocannabinols, listed at s. 161.14(4)(t), is subject to the following penalties:

1.  If the amount possessed, with intent to manufacture or deliver, is 500 grams or less, or 10 marijuana plants or less, the person shall be fined not less than $500 nor more than $25,000 and may be imprisoned for not more than 3 years.

should have been suppressed because: (a) prior to his entry, the police officer lacked probable cause to believe that Wanie resided in the apartment; (b) even if there was sufficient evidence to believe that Wanie resided in the apartment, the underlying warrant used by the police officer to gain entry was invalid since the police officer did not seek judicial approval to modify the warrant to reflect Wanie's new address; and (c) no exigent circumstances existed at the time the police officer entered the apartment, establishing an exception to the warrant requirement.

The circuit court denied Kiper's motions to suppress and concluded that (a) probable cause existed to believe Wanie resided in Kiper's apartment, and (b) exigent circumstances existed which would justify the warrantless entry because the police officer feared Wanie would attempt to evade custody by fleeing through a rear apartment exit.[2] Consequently, the circuit court found that the holding in *Steagald v. United States,* 451 U.S. 204 (1981), did not apply. The *Steagald* Court held that in the absence of consent or exigent circumstances, a search warrant is required to enter the home of an individual in order to execute an arrest warrant for a third party believed to be present therein. *Id.* at 213–14.

Affirming the judgment of the circuit court, the court of appeals concluded that this case was controlled by *Payton v. New York,* 445 U.S. 573, 603 (1980), wherein the United States Supreme Court held that police may enter a dwelling to serve an arrest warrant founded on probable cause only when there is reason to believe the suspect resides there and is present within.

---

[2] The circuit court did not address the validity of the underlying arrest warrant for Wanie.

The issue before this court is whether police entry into Kiper's home is controlled by *Steagald* or *Payton*. For the reasons set forth below, we reverse the decision of the court of appeals and hold that *Steagald* is controlling in this case. Accordingly, the police officer was required to obtain a search warrant prior to entering Kiper's apartment to execute an arrest warrant for Wanie. Absent the search warrant, the police entry was illegal, and any and all statements Kiper made to the police, as well as any evidence seized from Kiper's apartment, ought to have been suppressed. Further, neither consent nor exigent circumstances existed at the time of the police officer's entry which would have established an exception to the requirement for the search warrant.

In 1992, Wanie was convicted, pursuant to § 345.45(1) of the Green Bay Code of Ordinances, of "permitting [an] unauthorized minor to drive." The judgment of conviction required payment of a $55 fine, due on November 2, 1992. Wanie failed to pay the fine, and a warrant was issued for his arrest on December 2, 1992.[3] On December 31, 1992, Green Bay police officer Todd Thomas (Thomas) sought to execute the arrest warrant. The face of the warrant indicated an address of "1221 Doblon, Rear," but it had been crossed out and replaced with the address "207 N. Irwin." An additional notation of "Moved" was marked next to the two addresses. However, as Thomas would later testify, he did not look for Wanie at "207 N. Irwin" on December 31 because he previously learned that Wanie had moved from that address as well.

---

[3] The warrant, issued pursuant to § 800.095, Stats., stated that if Wanie's failure to pay the fine was not for good cause, he could be imprisoned for up to three days, unless the judgment was satisfied before the expiration of that period.

Instead, Thomas went to Kiper's home, 1136 Harvey Street, Apartment 3, believing he might find Wanie there since he had seen him at the same location six weeks earlier while on another call.[4] Upon his arrival, Thomas notified the police department that he intended to pick up a party on a warrant.[5] Thomas then went to the apartment and knocked on the front door. A young man named Jason Mianecki (Mianecki) opened the door, and Thomas asked if "David Wane was there,"[6] mispronouncing Wanie's last name. Shortly after Mianecki responded "no," Thomas saw the person he believed to be Wanie inside the apartment, near the doorway. Thomas then said that a warrant had been issued for "Mr. Wane." Wanie responded that "Wane" wasn't there and walked away from the doorway area toward the kitchen. Thomas entered the apartment and followed Wanie down the hallway toward the bedrooms. At that point, Thomas asked Wanie to identify himself, which he did.

While in the hallway, Wanie attempted to close one of the bedroom doors. Thomas told him to stop and,

---

[4] Thomas kept a list of individuals he had seen at the apartment on that occasion. He later testified that "a lot of kids . . . hung around . . . and . . . stayed" at Kiper's apartment.

[5] In response to this call, the police department sent a second patrol officer, Colleen Belongea. When Thomas arrived at the Harvey Street address, he had photostatic copies of the arrest warrant and a picture of Wanie in the squad car. He left both documents in the squad car when he went to the apartment.

[6] The state notes that according to Mianecki's testimony, Thomas asked if Wanie "lived there." Mianecki responded that he would get him. The state argues that this testimony ought to be used to prove Wanie's residence. The circuit court, however, found Thomas's testimony to be more credible. We therefore use the circuit court's findings in this regard.

through the partially closed doorway, saw drug paraphernalia and smelled the odor of marijuana. Thomas entered the bedroom, told Wanie to sit on the couch, and saw Kiper standing next to a number of items located on the floor, including a metal lock box, scales, a bong, and drugs.

When the second police officer, Belongea, arrived at the apartment, a complete search of the bedroom was conducted, resulting in the seizure of the aforementioned items as well as other drugs located under a mattress. Kiper was placed under arrest and taken to the police department by Thomas. Wanie was also arrested and taken to the police department by Belongea, who served him with the outstanding arrest warrant.

In an information dated January 26, 1993, Kiper was charged with possession with intent to deliver THC, in violation of § 161.41(1m)(h)1, Stats.[7] After he waived his right to a preliminary hearing and was bound over for trial, Kiper filed motions to suppress any and all statements he gave to the police, as well as physical evidence obtained from his apartment, arguing that the evidence was seized as a result of an illegal search. Specifically, Kiper argued that under *Steagald,* the police could not enter his home to execute an arrest warrant for a third party (Wanie) without first securing a search warrant. Further, according to Kiper, even if the police officer had a reasonable belief that Wanie was in the apartment, that belief was never subjected "to the detached scrutiny of a judicial officer." *Steagald,* 451 U.S. at 213.[8] Finally, Kiper argued that no exigent

[7] On January 4, 1993, Kiper was released from custody on a $2,500 signature bond, pending trial.

[8] At the suppression hearing, Wanie testified that he actually was residing in the apartment on December 31, 1992.

77

circumstances existed at the time Thomas entered the apartment which would provide an exception to the warrant requirement. The circuit court, however, denied the motions to suppress on May 7, 1993, and found that Thomas legally entered Kiper's apartment because he had probable cause to believe Wanie lived there. As a result, *Steagald* did not control, and a search warrant was not required. Further, the court concluded that the following exigent circumstances existed, authorizing police entry into the apartment: (a) Wanie did not "stay put" when Thomas attempted to question him, and (b) Thomas feared that Wanie would attempt to evade being taken into custody by fleeing through the rear entrance to the apartment.[9]

On May 13, 1993, Kiper entered a plea of no contest to the charge against him.[10] At the sentencing

However, Thomas was not aware of that fact at the time he entered the apartment. The state, in its brief to this court, agrees with Kiper that "the fortuity of after-the-fact confirmation of Mr. Wanie's co-residency at defendant's apartment does not itself justify Officer Thomas's entry, because the fourth amendment ' "is designed to prevent, not simply redress, unlawful police action." ' *Steagald v. United States,* 451 U.S. 204, 215 (1981) (citations omitted)."

[9] In its decision, the circuit court concluded that because probable cause existed to believe Wanie was a resident of Kiper's apartment, Thomas was authorized to enter and execute the arrest warrant when he saw Wanie standing near the doorway. Stating that *Steagald* did not apply to this case, the court, without directly invoking the rule in *Payton,* applied its rationale.

[10] Kiper was entitled to challenge the suppression hearing ruling under § 971.31(10), Stats., which provides:

**971.31 Motions before trial. . . .**
    **(10)** An order denying a motion to suppress evidence or a *motion challenging the admissibility of a statement of a defendant*

78

hearing, the circuit court decided to withhold the imposition of sentence in lieu of a three-year probation, the conditions of which included a fine, community service, and nine months in jail.

On appeal, Kiper argued that his right to be free from unreasonable search and seizure in the privacy of his home was violated when the police entered the apartment without first obtaining a search warrant as required under *Steagald*. As a result, the arrest warrant for Wanie could not constitutionally support the entry. The court of appeals rejected Kiper's arguments, affirmed the judgment of the circuit court, and found that the facts supported a conclusion of probable cause to believe Wanie lived in and was present at the apartment. Additionally, probable cause authorizing Thomas's entry was based upon the totality of the circumstances: (a) Thomas recognized Wanie from a photograph he had with him at the scene; (b) Thomas had seen Wanie at the apartment six weeks earlier; (c) Wanie had moved from two previous addresses and had no known present address; and (d) Wanie's conduct inside the apartment was consistent with an inference of control or dominion over the premises. Therefore, according to the court of appeals, Thomas was authorized under *Payton* to enter the apartment in order to execute the warrant.

"In reviewing an order suppressing evidence, this court will uphold a trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence." *State v. Richardson,* 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990) (citation omitted). "However, whether a seizure or search has occurred,

may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty.

and, if so, whether it passes statutory and constitutional muster are questions of law subject to *de novo* review." *Id.* at 137–38 (citation and footnote omitted).

Kiper argues that the nonconsensual police entry into his home to execute an arrest warrant for Wanie resulted in a violation of his fourth amendment rights because, at the time of entry, police did not have probable cause to believe Wanie was a resident. As a consequence, Kiper claims that a search warrant was required to enter his apartment to look for the subject of the arrest warrant, Wanie, and that any evidence seized as a result of the illegal search should have been suppressed. The resolution of this case requires a three-part analysis: (1) did the police have probable cause to believe Wanie was a resident of and present in Kiper's apartment prior to the time of entry; (2) are the facts of this case controlled by *Steagald,* such that a search warrant was required to enter Kiper's apartment; and (3) did exigent circumstances exist at the time Thomas entered the apartment, establishing an exception to the warrant requirement?

### THOMAS LACKED PROBABLE CAUSE TO BELIEVE WANIE LIVED IN KIPER'S APARTMENT

Both the fourth amendment to the United States Constitution and Art. I, sec. 11 of the Wisconsin Constitution guarantee citizens the right to be free from unreasonable searches and seizures. Further, this court "consistently follows the United States Supreme Court's interpretation of the search and seizure provision of the fourth amendment in construing the same provision of the state constitution." *Richardson,* 156

Wis. 2d at 137. In particular, the fourth amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[11]

The core requirement of probable cause serves to "safeguard the privacy and security of individuals against arbitrary invasions by government officials." *State v. DeSmidt,* 155 Wis. 2d 119, 130, 454 N.W.2d 780 (1990) (citing *State v. Boggess,* 115 Wis. 2d 443, 448–49, 340 N.W.2d 516 (1983)). Therefore, the quantum of evidence needed to establish probable cause · must constitute more than mere suspicion[12] and is subject to the scrutiny of a neutral and detached magistrate,[13] who judges the facts "against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appro-

---

[11] The language in Art. I, sec. 11 of the Wisconsin Constitution is substantially the same and provides:

**Searches and Seizures.** SECTION 11. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

[12] *See Brinegar v. United States,* 338 U.S. 160, 175–76 (1949).

[13] *See United States v. United States District Court,* 407 U.S. 297, 318 (1972); *Ritacca v. Kenosha County Court,* 91 Wis. 2d 72, 77, 280 N.W.2d 751 (1979).

priate?" *Terry v. Ohio,* 392 U.S. 1, 21–22 (1968) (citations omitted). Finally, the existence of probable cause is determined by analyzing the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

Courts generally have assumed that the quantum of evidence required to show probable cause is the same whether one is concerned with an arrest warrant or a search warrant. *See* 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 3.1(b) at 544 (2d ed. 1987). It is true that both types of warrants "serve to subject the probable-cause determination of police officers to judicial review and assessment." Edward G. Mascolo, *Arrest Warrants and Search Warrants in the Home: Payton v. New York Revisited and Modified Under State Constitutional Law,* 66 Conn. B.J. 333, 336 (1992) [hereinafter *Arrest Warrants and Search Warrants in the Home].* However, an arrest warrant and a search warrant each protect distinct interests under the fourth amendment. For example, requiring a warrant to arrest protects an individual from unreasonable seizure because a magistrate or judge may issue the document only upon a showing that probable cause exists to believe the subject sought has committed a criminal offense. The quantum of evidence must constitute

> more than a possibility or suspicion that defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not. The information which constitutes probable cause is measured by the facts of the particular case.

*State v. Mitchell,* 167 Wis. 2d 672, 681–82, 482 N.W.2d 364 (1992) (citation omitted).

By contrast, the prerequisite of a warrant to search "serves to protect the privacy interest of the individual in his home and possessions from the unjustified intrusion of the police by requiring a showing of probable cause to believe that the legitimate object of a search is situated in a particular place." *Arrest Warrants and Search Warrants in the Home,* 66 Conn. B.J. at 336–37. The quantum of evidence needed to establish probable cause in this context is less than that required to support bindover for trial at the preliminary examination. *State v. Higginbotham,* 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991) (citations omitted). Therefore, the duty of the judge issuing the warrant is to make

> 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'

*Id.* at 990 (quoting *Gates,* 462 U.S. at 238). In both an arrest warrant and a search warrant context, probable cause eschews technicality and legalisms in favor of a " 'flexible, common-sense measure of the plausibility of particular conclusions about human behavior.' " *Id.* at 989 (quoting *State v. Petrone,* 161 Wis. 2d 530, 547–48, 468 N.W.2d 676 (1991)).

We conclude that the circuit court's findings are not supported by the great weight and clear preponderance of the evidence. *Richardson,* 156 Wis. 2d at 137. Rather, the evidence supports a finding that Thomas lacked probable cause to believe Wanie was a resident

of Kiper's apartment on December 31, 1992. According to his own testimony, Thomas knew only that Wanie had moved from the two addresses noted on the face of the arrest warrant, had no known present address, and that Wanie was present at Kiper's apartment six weeks earlier.[14] Without more substantial evidence, any belief held by Thomas that Wanie may have resided at the apartment constituted no more than mere suspicion.[15] Additionally, the fact that Wanie approached

---

[14] The dissent suggests that "Wanie's presence in the apartment and his response to Officer Thomas, after Mianecki had already acknowledged Officer Thomas's presence, is consistent with a reasonable inference that Wanie had dominion or control over the premises." Dissenting op. at 96. Though probable cause "has been equated with reasonable grounds," *State v. Drogsvold,* 104 Wis. 2d 247, 255, 311 N.W.2d 243 (Ct. App. 1981) (citing *Johnson v. State,* 75 Wis. 2d 344, 348, 249 N.W.2d 593 (1977)), it is not the equivalent of a reasonable inference. Rather, probable cause requires that "all the collective information in the police department is *adequate* to sustain the arrest." *Johnson,* 75 Wis. 2d at 350 (emphasis added). In this case, Officer Thomas did not have probable cause to believe that Wanie exercised any greater dominion or control over the premises than Mianecki, the young man who answered the door.

[15] The following testimony was received from Thomas at the suppression hearing:

Q: You had seen Mr. Wanie in that apartment?
A: I had his name down on a list that I kept of the people that were in the apartment in my notebook. And there was about ten names on that list. And his was one of those.
Q: Was that list that you compiled a list of people who were in the apartment at the time you were there or was it a list of people who resided in that apartment?
A: It was a list of people that were at the apartment when I was there....
Q: Did you know [Wanie] was staying there when you compiled your list?
A: I don't remember if I asked him if he lived there or not.

the doorway area from inside the apartment after Mianecki answered the door does not, without more, prove that Wanie exercised control or dominion over the premises. Instead, Wanie's movement toward the doorway merely confirms his presence in the apartment. Because there is insufficient evidence to conclude that Wanie resided in Kiper's apartment, we must now apply a *Steagald* analysis.

## POLICE ENTRY INTO KIPER'S APARTMENT WAS ILLEGAL UNDER STEAGALD V. UNITED STATES

This court has not previously discussed the United States Supreme Court's decision in *Steagald*. For that reason, we provide the following background.

In 1980, the Supreme Court decided *Payton,* a consolidated case in which appellants challenged the constitutionality of New York statutes authorizing police officers to enter a private residence without a warrant to make a routine felony arrest. One of the appellants, Payton, was sought by police as a suspect in the murder of a gas station manager. When the police went to Payton's apartment to arrest him, they did not have either an arrest warrant or a search warrant. Hearing music playing inside the apartment, they called for emergency assistance and subsequently used crowbars to break open the door and enter the apartment. *Payton,* 445 U.S. at 576. Upon entry, the police discovered that no one was present; however, they did seize a .30-caliber shell casing which was later admitted into evidence during Payton's murder trial. *Id.* at 576–77. The trial judge found that (a) the warrantless

Q: So, when you went there on the 31st, you didn't know whether he lived there or not?

A: No, I didn't.

and forcible entry was authorized by state statute; (b) the evidence in plain view was properly seized; and (c) exigent circumstances justified the police officers' failure to announce their purpose, as required by statute, before entering the apartment. *Id.* at 577.

Reversing the New York Court of Appeals, the Supreme Court held that, absent consent or exigent circumstances, the fourth amendment prohibits the police from effecting a warrantless entry into a suspect's home in order to make a routine felony arrest without an arrest warrant. In particular, the Court reasoned:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' . . . In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Id.* at 589–90 (quoting *Silverman v. United States,* 365 U.S. 505, 511 (1961)).

In 1981, the Supreme Court extended the discussion of the right of privacy in the home to include the concerns of third parties by considering the issue of "whether an arrest warrant—as opposed to a search

warrant—is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances." *Steagald,* 451 U.S. at 212. According to the facts of the case, federal agents learned from an informant that the subject of an arrest warrant, Ricky Lyons, could be found at Steagald's home during a certain 24-hour period. The agents entered the home without consent, searching for Lyons. Lyons was not found. However, the agents discovered cocaine, which discovery led to Steagald's prosecution on federal drug charges.

Prior to his trial, Steagald moved to suppress all evidence obtained during a series of searches in his home,[16] arguing that the evidence was illegally seized because the agents initially entered his home without a search warrant. Steagald's motions were denied, and he was thereafter convicted of the charges against him. The United States Court of Appeals for the Fifth Circuit affirmed the conviction. The Supreme Court reversed and held that, absent consent or exigent circumstances, the agents were required to secure a search warrant to enter Steagald's home to look for Lyons.

In its reasoning, the Court first concluded that both consent and exigent circumstances were lacking at the time of the search. Second, the agents used the arrest warrant for Lyons as legal authority to enter

---

[16] When the cocaine was initially discovered, one of the federal agents sent a police officer to obtain a search warrant. A second search, which uncovered more incriminating evidence, was conducted by the agents while they waited for the warrant. After the search warrant was obtained, a third search ensued, resulting in the seizure of 43 pounds of cocaine. *Steagald,* 451 U.S. at 206–07.

Steagald's home, based on a belief that Lyons might be a guest there. *Steagald,* 451 U.S. at 213. "Regardless of how reasonable this belief might have been, it was never subjected to the detached scrutiny of a judicial officer." *Id.* As a consequence,

> while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home. Instead, petitioner's only protection from an illegal entry and search was the agent's personal determination of probable cause. In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant.

*Id.* Third, if only an arrest warrant were required in this type of situation, police would be free to search the homes of all the suspect's friends and acquaintances. *Id.* at 215. Finally, the Court stated that an underlying purpose of the fourth amendment was to protect against abuses by law enforcement officers similar to that experienced in the Colonies with writs of assistance: police were given the unfettered discretion to choose which homes to search. *Id.* at 220. Thus,

> [w]hatever practical problems remain . . . cannot outweigh the constitutional interests at stake. Any warrant requirement impedes to some extent the vigor with which the Government can seek to enforce its laws, yet the Fourth Amendment recognizes that this restraint is necessary in some cases

88

to protect against unreasonable searches and seizures.

*Id.* at 222.

Having already held that prior to his entry Thomas did not have probable cause to believe Wanie was a resident of Kiper's apartment, we now conclude that Thomas needed a search warrant to enter the apartment to look for and execute the arrest warrant for Wanie. Thomas could not use the arrest warrant as legal authority to enter Kiper's home based on the simple belief that Wanie might be there, because that belief was never subjected to the neutral and detached scrutiny of a judicial officer. *See Steagald,* 451 U.S. at 213.

### EXIGENT CIRCUMSTANCES DID NOT EXIST TO JUSTIFY THOMAS'S ENTRY INTO KIPER'S APARTMENT

The state argues that regardless of the scope of the arrest warrant's authorization, Thomas was able to make a lawful and warrantless entry into Kiper's apartment on the grounds of exigent circumstances. We agree that if exigent circumstances developed during an attempt to identify and arrest Wanie, Thomas could have lawfully entered the apartment without a search warrant. However, the facts of this case do not indicate that any exigency existed at any time during Thomas's encounter with Wanie at Kiper's apartment.

The basic test to determine whether exigent circumstances exist is an objective one: "Whether a police officer under the circumstances known to the officer at the time reasonably believes that delay in procuring a warrant would gravely endanger life or risk destruc-

tion of evidence or greatly enhance the likelihood of the suspect's escape." *State v. Smith,* 131 Wis. 2d 220, 230, 388 N.W.2d 601 (1986). As a result, this court has identified four factors which constitute the exigent circumstances required for a warrantless entry: (1) an arrest made in "hot pursuit," (2) a threat to safety of a suspect or others, (3) a risk that evidence will be destroyed, and (4) a likelihood that the suspect will flee. *Id.* at 229; *see also Laasch v. State,* 84 Wis. 2d 587, 595–96, 267 N.W.2d 278 (1978).

The state claims that exigent circumstances were created when Wanie approached the doorway area and falsely denied to Thomas that he was the individual named in the arrest warrant, thereby obstructing a police officer, in violation of § 946.41, Stats.[17] We disagree. When Thomas first observed Wanie in the doorway area, he asked if "David Wane" were there, mispronouncing Wanie's last name. Wanie responded that "Wane" wasn't there and began to walk away. According to the state, Wanie should have corrected the officer's mispronunciation, since Wanie knew he was the subject of the arrest warrant. The state's argument is based upon Wanie's testimony during Kiper's suppression hearing, wherein Wanie acknowledged he

---

[17] Section 946.41, Stats., provides in pertinent part:

**946.41 Resisting or obstructing officer. (1)** Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor.

(2) In this section:

(a) 'Obstructs' includes without limitation knowingly giving false information to the officer or knowingly placing physical evidence with intent to mislead the officer in the performance of his or her duty including the service of any summons or civil process.

(b) 'Officer' means a peace officer or other public officer or public employe having the authority by virtue of the officer's or employe's office or employment to take another into custody.

was aware of the warrant. However, we must consider only what occurred during the initial encounter with Thomas, and Wanie's failure to correct the officer at that time did not constitute obstruction. Any further conversations between Wanie and Thomas which may or may not have amounted to obstruction occurred after the officer was already inside the apartment and are irrelevant to the issue of whether the entry was lawful.

The state also argues that exigent circumstances developed when Thomas encountered Wanie, because the officer feared Wanie might try to evade custody by fleeing through a rear apartment exit. However, we conclude that the facts of this case did not combine to create "extreme emergency conditions"[18] or the equivalent of "hot pursuit," justifying a warrantless police entry. Green Bay police were in receipt of an arrest warrant for Wanie nearly a month before he was seen at Kiper's apartment on December 31, 1992. Further, there is nothing in Thomas's testimony during the suppression hearing to indicate that police regarded Wanie's apprehension as a primary objective.

We acknowledge that a fundamental concern for police "is that persons, as opposed to objects, are inherently mobile, and thus officers seeking to effect an arrest may be forced to return to the magistrate several times as the subject of the arrest warrant moves from place to place." *Steagald,* 451 U.S. at 221. However, Wanie's mobility did not create an exigency or an impediment to law enforcement as much as it created

---

[18] In *United States v. Santana,* 427 U.S. 38, 42–43 (1976), the Supreme Court stated that "hot pursuit" may justify a warrantless entry into one's home to execute an arrest because the police must act quickly to apprehend a fleeing criminal suspect or to prevent the imminent destruction of evidence.

an inconvenience for police, who, once aware of his presence at Kiper's apartment, were required to secure a search warrant to gain entry. *Id.* at 222 (the inconvenience of obtaining such a warrant does not significantly increase when an outstanding arrest warrant already exists).

Additionally, Thomas testified that the presence of Wanie in Kiper's apartment posed no threat to the safety of anyone present:

> Q: Did you have any reason to believe that David Wane or David Wanie was a dangerous individual?
> A: He had a warrant on him. That is the only thing I knew about him.
> Q: What was that warrant for, again?
> A: Permitting unauthorized minor to drive, municipal warrant.
> Q: Failure to pay a fine warrant?
> A: Basically, yes.
> Q: He didn't pay a fine, so there was a pick up warrant on him?
> A: Correct. An appearance warrant to bring him in front of a judge.
> Q: The amount of the fine is $55?
> A: Correct.
> Q: My question is, did you have some reason to believe Mr. Wanie was a dangerous individual?
> A: No.

In *Welsh v. Wisconsin,* 466 U.S. 740, 742 (1984), the United States Supreme Court considered the issue of whether "the Fourth Amendment prohibits the police from making a warrantless night entry of a person's home in order to arrest him for a nonjailable traffic offense." The facts revealed that Welsh was observed erratically driving his car, causing it to

swerve off the road into a field. Even though a witness suggested that he remain with the car and wait for assistance, Welsh walked away from the scene. Police checked the car's registration and, without obtaining a warrant, proceeded to Welsh's home, wherein he was arrested for driving a motor vehicle while under the influence of an intoxicant, in violation of § 346.63(1), Stats. (1977). Though probable cause existed to arrest Welsh, the Supreme Court concluded that the warrantless entry into Welsh's home violated the fourth amendment because the police did not establish the existence of exigent circumstances. The Court reasoned:

> Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. . . . When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Welsh,* 466 U.S. at 750 (citation and footnote omitted).

Applying the *Welsh* standard to the instant case, we conclude that Thomas was not faced with exigent circumstances during his encounter with Wanie at Kiper's apartment. The arrest warrant for Wanie

resulted from his failure to pay a $55 fine for violating a municipal ordinance. Permitting an unauthorized minor to drive was far less consequential than the OWI offense at issue in *Welsh*. Further, there is nothing in the record demonstrating that the character of Wanie, the events surrounding the issuance of the arrest warrant, or the conduct of those present at Kiper's apartment when Thomas arrived were conducive to the development of exigent circumstances.

Accordingly, we reverse the decision of the court of appeals. Under *Steagald,* Thomas was required to obtain a search warrant prior to entering Kiper's apartment to execute an arrest warrant for Wanie. Absent the warrant, consent or exigent circumstances, police entry into the apartment was illegal, and all statements Kiper made to the police, as well as any evidence seized from his apartment, should have been suppressed.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

STEINMETZ, J. *(dissenting).* Armed with an arrest warrant for David Wanie, Officer Thomas knocked on the front door of Wanie's residence. A young man named Jason Mianecki opened the door. Officer Thomas asked if Wanie "lived there," and Mianecki responded that he would get him.[1] While

---

[1] Mianecki's and Officer Thomas's testimony differed slightly. Mianecki testified that he responded "I will get him." Officer Thomas testified that Mianecki responded "[Wanie] is not here." Nonetheless, it is undisputed that while the conversa-

standing outside the open door, Officer Thomas saw Wanie walk past the doorway. Officer Thomas recognized Wanie based on a photograph of him that was in the squad car and based on his personal observation of Wanie approximately six weeks earlier. Furthermore, as the trial court found, Wanie had a "very distinctive appearance" and an "unusual haircut." Thus, although Officer Thomas mispronounced Wanie's name, he nonetheless could and did identify Wanie by his appearance.

While still standing outside the door, Officer Thomas stated that a warrant had been issued for "Mr. Wane." Knowing that he was the subject of an outstanding arrest warrant, Wanie replied that "Wane" was not there and walked away from Officer Thomas. Reasonably fearing that Wanie would flee out a rear entrance, Officer Thomas entered the apartment and arrested Wanie. In the process, Officer Thomas saw in plain view[2] illegal drug paraphernalia belonging to Kiper.

In *Payton v. New York,* 445 U.S. 573, 603 (1980), the Supreme Court stated that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."[3] As the court of appeals in this case correctly

---

tion was taking place, Wanie came out of a bedroom and walked past the open door.

[2] "The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Payton,* 445 U.S. at 587.

[3] In *Steagald v. United States,* 451 U.S. 204, 221 (1981), the Court twice reiterated that "an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." (citing

noted, this language has been construed to mean that a police officer may enter the home of a person named in an arrest warrant if the officer has probable cause to believe that the person named in the warrant resides in the home. *See, e.g., Shea v. Smith,* 966 F.2d 127, 131–32 (3rd Cir. 1992); *United States v. Harper,* 928 F.2d 894, 896 (9th Cir. 1991). Under the totality of the circumstances, Officer Thomas had probable cause to believe that Wanie was residing in Kiper's home.

Officer Thomas had confronted Wanie in the same apartment approximately six weeks earlier. From this confrontation, he thought that Wanie might be residing there. This suspicion alone would fall short of probable cause to believe that Wanie was residing at the apartment. However, Officer Thomas's suspicion rose to the level of probable cause when Wanie, who had no known present address, emerged from inside the apartment, approached Officer Thomas at the apartment door, and told him that "Wane" was not there. Wanie's presence in the apartment and his response to Officer Thomas, after Mianecki had already acknowledged Officer Thomas's presence, is consistent with a reasonable inference that Wanie had dominion or control over the premises.[4]

---

*Payton,* 445 U.S. at 602–03); *see also id.* at 214 n.7 ("In *Payton,* of course, we recognized that an arrest warrant alone was sufficient to authorize the entry into a person's home to effect his arrest. . . . Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home").

[4] The reasonableness of this inference is buttressed by the fact that Wanie was actually residing in the apartment on December 31, 1992, the date that Officer Thomas executed the warrant.

96

I recognize, as did the court of appeals, that this evidence is also consistent with a reasonable inference that Wanie was only a guest in Kiper's apartment. However, probable cause is a flexible, common-sense standard based on the practical considerations of everyday life on which ordinary persons, not legal technicians, act. *See Texas v. Brown,* 460 U.S. 730, 742 (1983). It does not require evidence showing proof beyond a reasonable doubt or even proof more likely than not. *See State v. Mitchell,* 167 Wis. 2d 672, 681–82, 482 N.W.2d 364 (1992). Accordingly, when a police officer is confronted with two reasonable competing inferences, one that would justify the search and another that would not, the officer is entitled to rely on the reasonable inference justifying the search. *Cf. State v. Tompkins,* 144 Wis. 2d 116, 125, 423 N.W.2d 823, 827 (1988).[5]

Based on this understanding of probable cause, I agree with the trial court and the court of appeals that the evidence supports a finding that Officer Thomas had probable cause to believe that Wanie was residing in the apartment in question. Officer Thomas was not required to know for certain whether Wanie was residing in the apartment. Rather, he was entitled to rely on the reasonable inference that Wanie was residing there. Thus, because Officer Thomas had a valid arrest warrant and had probable cause to believe that Wanie

---

[5] In *Tompkins,* 144 Wis. 2d at 125, this court held:

[W]here there is evidence that would lead a reasonable person to conclude that the evidence sought is likely to be in a particular location—although there may be other evidence that could lead a reasonable person to conclude that the evidence may instead be in another location—there is probable cause for a search of the first location. The search of the first location is appropriate although there may also be probable cause to believe the evidence may be in the second or third location.

97

was residing in the apartment, under *Payton,* Officer Thomas had authority to enter the apartment in order to execute the arrest warrant for Wanie.

The majority incorrectly concludes that *Steagald v. United States,* 451 U.S. 204 (1981), is controlling. In *Steagald,* agents of the Drug Enforcement Administration (DEA), armed with an arrest warrant for Ricky Lyons, entered Gary Steagald's residence and proceeded to search for Lyons based solely on information that Lyons could be reached by telephone at Steagald's residence during the next 24 hours. While searching the residence for Lyons, the DEA agents found a substantial amount of cocaine. Steagald was subsequently arrested and indicted on federal drug charges. Thus, the DEA agents relied on the arrest warrant for Lyons as legal authority to enter the home of a third person based on their belief that Lyons might be a guest in that home. Within this context, the Court stated that the issue was "whether, under the Fourth Amendment, a law enforcement officer may legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant." *Id.* at 205.

The facts in *Steagald* differ substantially from the facts in this case. In *Steagald,* the residence that the DEA agents entered and searched was not the residence of the person named in the arrest warrant. At best, the agents thought that the subject of the warrant might be a short-term guest there. In the instant case, the residence that Officer Thomas entered was the residence of David Wanie, the person named in the arrest warrant. Officer Thomas did not rely on the arrest warrant as legal authority to search the residence of a third party; rather, he properly relied on the warrant as authority to enter Wanie's residence and seize him.

Given the factual differences between *Steagald* and this case, I believe, contrary to the majority, that *Steagald* is not controlling.

Moreover, in applying *Steagald,* the majority makes an unwarranted extension of *Welsh v. Wisconsin,* 466 U.S. 740 (1984). The majority concludes that under *Welsh,* Officer Thomas was not faced with exigent circumstances during his encounter with Wanie, primarily because the offense underlying the warrant was the failure to pay a fine for permitting an unauthorized minor to drive a motor vehicle. Majority op. at 93–94. *Welsh* was a *warrantless,* hot pursuit case in which the Supreme Court held that the severity of the underlying offense was relevant to whether exigent circumstances existed in that case. *Welsh,* 466 U.S. at 750. The underlying offense in *Welsh* was a nonjailable traffic violation. In contrast, the case before us is not a warrantless, hot pursuit case. Officer Thomas entered Wanie's residence armed with an arrest warrant for a civil violation. The failure to pay this violation carried a fine or, in the alternative, a three-day jail term.

Exigent circumstances operate as an exception to the warrant requirement. *See Payton,* 445 U.S. at 583. In other words, exigent circumstances can "justify a warrantless entry into a home for the purpose of either arrest or search." *Id.* However, when a valid warrant has been issued by a judicial officer, as in the instant case, the presence or absence of exigent circumstances is totally irrelevant. Accordingly, I believe that the majority errs in extending and applying *Welsh* to this case.

Even if I were to conclude, which I do not, that Officer Thomas was required to secure a search warrant, I would nonetheless disagree with the majority's conclusion that exigent circumstances did not exist jus-

99

tifying Officer Thomas's entry into the apartment. I would conclude that Officer Thomas's observation of Wanie in the doorway coupled with his reasonable fear that Wanie might flee out a back door to the apartment provides a sufficient basis for a finding of exigent circumstances.

A police officer who has an arrest warrant for a suspect should not be forced to stand outside the open front door of the suspect's residence and watch as the suspect walks out the back door. Regardless of the severity of the offense underlying the arrest warrant, if the officer is in possession of an arrest warrant, the officer may enter the home and arrest the suspect. Under these circumstances, the severity of the underlying offense is simply irrelevant. The arrest warrant gives the officer legal authority to enter the premises and arrest the suspect. *Steagald,* 451 U.S. at 221 (citing *Payton,* 445 U.S. at 602–03).

For these reasons, I dissent.

I am authorized to state that JUSTICES ROLAND B. DAY and JON P. WILCOX join this dissenting opinion.