STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles J. MOLEY, Defendant-Appellant.

Court of Appeals

*No. 92-0671-CR. Submitted on briefs August 5, 1992.—Decided September 16, 1992.*

(Also reported in 490 N.W.2d 764.)

208

On behalf of the defendant-appellant, the cause was submitted on the brief of *Terry W. Rose* of *Rose & Rose* of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Paul Lundsten,* assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J. Charles J. Moley was convicted of several counts of manufacturing and possessing a controlled substance. He appeals the judgment and alleges that his motion to suppress evidence was improperly denied. Moley's principal argument is that the search warrant pursuant to which the evidence was obtained was invalid because it was based on stale information. We conclude that the information contained in Detective Bruce Klawitter's warrant affidavit was "so closely related to the time of the issue of the warrant as to

justify a finding of probable cause at that time." *State v. Ehnert,* 160 Wis. 2d 464, 469, 466 N.W.2d 237, 238 (Ct. App. 1991) (quoting *Sgro v. United States,* 287 U.S. 206, 210 (1932)). We therefore affirm, and adopt the New Hampshire rule that if old information in a warrant affidavit "contributes to an inference that probable cause exists at the time of the application [for a warrant], its age is no taint." *State v. Valenzuela,* 536 A.2d 1252, 1264 (N.H. 1987), *cert. denied,* 485 U.S. 1008 (1988).

On August 9, 1991, the Kenosha County Controlled Substance Unit executed a search warrant on Moley's property. The officers were looking for materials connected with the growing and sale of marijuana. The search warrant and the warrant affidavit are the subjects of this appeal. The warrant affidavit contains the following information.

In September 1990, Detective Klawitter received information that marijuana was growing on Moley's property. Detective Klawitter went to Moley's property at that time and found "chicken wire plant supports in the weeds, approximately one dozen plant stands, numerous areas where plants had been pulled out, and piles of soil and mulch." According to his testimony at the suppression hearing, Detective Klawitter did not investigate further. He kept an active file in the drug unit and intended to check the property again in 1991.

The affidavit states that Detective Klawitter was specially trained and certified as an "aerial marijuana spotter." On August 6, 1991, Detective Klawitter flew over Moley's property at approximately 800 feet elevation and "spotted marijuana plants growing." On August 7, at approximately 1:00 p.m., Detective Klawitter drove to Moley's property. He walked several yards onto the property and observed several marijuana plants growing.

He also observed "wooden sticks holding the plants up for support as well as chicken wire around the base of the plants for support." Detective Klawitter picked a small portion of one of the plants and left the property. A field test was positive for the presence of marijuana.

On August 8, a circuit court commissioner for Kenosha county issued a warrant to search Moley's premises. During the search on August 9, the police found 157 marijuana plants growing on the property. The house and basement also contained various supplies and tools used for cultivating plants. In the living room, the police found bags containing marijuana, roaches, and marijuana seeds. In the rest of the house, the police also found various literature describing how to grow marijuana. One of the closets in the bedroom contained more marijuana seeds, a roach clip, and a triple beam scale.

Based on this and other evidence that was seized, Moley was charged with one count each of intentionally manufacturing a controlled substance and possessing with intent to deliver a controlled substance contrary to secs. 161.41(1m), 161.14(4)(t) and 939.05, Stats., and possession of marijuana without evidence that the tax had been paid under sec. 139.88, Stats. Moley sought to suppress all evidence that was obtained pursuant to the August 8 warrant.

At the hearing on Moley's motion to suppress, Detective Klawitter testified that his certification as an aerial marijuana spotter required him to identify marijuana from a height of 1000 feet. He also testified that the marijuana was located approximately 200 yards from Moley's residence. He said that he could not see the house from where the plants were. Detective Klawitter stated that he did not have to cross any fences when he entered Moley's property to take a sample of the plants.

By order dated October 16, the trial court denied Moley's motion to suppress the evidence obtained in the August 9 search. Moley then pled no contest to two counts, and the charge of possession without paying tax was dismissed. He was sentenced on the two counts and now appeals.

██

First, we consider whether the issuance of the warrant in this case was supported by probable cause. We are guided by the principle that appellate review of the sufficiency of a warrant affidavit is limited, and we give great deference to the court commissioner's determination. *Ehnert,* 160 Wis. 2d at 468, 466 N.W.2d at 238. We conclude that the totality of the information in Detective Klawitter's warrant affidavit supported a finding of probable cause.

We base our holding on the difference between stale information and stale probable cause explained in *State v. Valenzuela,* 536 A.2d 1252 (N.H. 1987). In that case, officers obtained permission to install pen registers on a defendant's telephone lines in 1983. The pen registers were used to collect information about outgoing calls from the defendant's telephone. In 1984, the police used the data from the pen registers in a warrant affidavit and obtained a wiretap order for the same telephone lines. The defendants moved to suppress the wiretap evidence on the ground that the pen register data was stale.

In affirming the denial of the defendants' motion, the New Hampshire Supreme Court held that the warrant affidavit stated sufficient probable cause. The court stated:

> The defendants reveal the central weakness of their staleness claim when they state in their brief that the superior court "relied upon stale information" in reaching the probable cause determination.

> The quotation reflects a confusion between stale probable cause and stale information. Stale probable cause, so called, is probable cause that would have justified a warrant at some earlier moment that has already passed by the time the warrant is sought.
>
> There is not, however, any dispositive significance in the mere fact that some information offered to demonstrate probable cause may be called stale, in the sense that it concerns events that occurred well before the date of the application for the warrant. If such past fact contributes to an inference that probable cause exists at the time of the application, its age is no taint.

*Valenzuela,* 536 A.2d at 1264 (citations omitted). The *Valenzuela* court considered the totality of the information in the warrant affidavit, including the officer's opinions based on his experience with drug transactions. It concluded that the warrant affidavit as a whole supported the inference that the drug activities were ongoing at the time the wiretap order was sought. *Id.* at 1265.

Here, Moley asserts that the information about marijuana growing on his property in 1990 is stale and cannot be used to support probable cause. He, like the defendants in *Valenzuela,* confuses the distinction between stale information and stale probable cause. We reiterate that the timeliness of information is not determined by counting days or months. *Ehnert,* 160 Wis. 2d at 469, 466 N.W.2d at 239.

The 1990 tip that Detective Klawitter received is admittedly old information. However, combined with his 1991 aerial identification of marijuana plants, the tip supports the inference that marijuana was growing on Moley's property during the 1991 growing season. This is a prime example of old information combining with

new data to create present probable cause. *See Valenzuela,* 536 A.2d at 1265.

We believe that the totality of the information contained in the warrant affidavit stated probable cause on August 8, 1991, not "at some earlier moment that [had] already passed by the time the warrant [was] sought." Id. at 1264. The allegedly stale information does not necessarily lead to stale probable cause. Therefore, we hold that the court commissioner properly issued the search warrant.

Moley also contends that the search warrant should not have been issued because Detective Klawitter's aerial identification of the marijuana was unreliable and false. We review the trial court's denial of Moley's motion to suppress evidence under the clearly erroneous standard. *United States v. McNeese,* 901 F.2d 585, 592 (7th Cir. 1990).

We conclude that the trial court's decision was not clearly erroneous. Detective Klawitter had specialized training in aerial marijuana identification. His certification required that he identify marijuana from an elevation of 1000 feet. The flyovers described in Detective Klawitter's warrant affidavit were at 800 feet. In addition, he was able to point to the marijuana on photographs presented at the suppression hearing. Based on these facts, we will not disturb the trial court's findings.

Finally, Moley argues that the search warrant violated the fourth amendment because it was based on the fruits of an illegal search and seizure. He contends that Detective Klawitter illegally entered the curtilage of his home to take a sample of the marijuana plants. We hold

that the search warrant was proper because the sampled plants were not within the curtilage of Moley's home.

The four factors used to determine the extent of a home's curtilage are: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. *United States v. Dunn,* 480 U.S. 294, 301 (1987). The essence of the determination is whether the area "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *Id.* at 300 (citations omitted). The extent of a home's curtilage is a question of constitutional fact which we review independently of the trial court's determination. *State v. Lange,* 158 Wis. 2d 609, 617, 463 N.W.2d 390, 392-93 (Ct. App. 1990).

We do not believe that an area 200 yards away from a home in a field that is not surrounded by fences can fairly be called a part of the home's curtilage. The area was used by hunters and passersby, and was visible to the public. Moley produced no evidence that he used the area immediately surrounding the marijuana to conduct "the intimate activity associated with the sanctity of [his] home and the privacies of life." *Dunn,* 480 U.S. at 300. In fact, the evidence strongly suggests that the area was used exclusively for cultivating marijuana. Thus, Detective Klawitter did not violate the home's curtilage when he gathered marijuana for testing, and did not commit an illegal search and seizure.

In conclusion, each of Moley's arguments fails. The search warrant was supported by probable cause, and Moley's motion to suppress the evidence obtained pursu-

ant to the search warrant was properly denied. Finally, Detective Klawitter did not commit an illegal search and seizure when he took plant samples without a warrant. For these reasons, we affirm the trial court's judgment.

*By the Court.*—Judgment affirmed.