STATE of Wisconsin, Plaintiff-Respondent,

v.

Dennis M. GRALINSKI, Defendant-Appellant.†

Court of Appeals

*No. 2006AP929–CR. Submitted on briefs May 1, 2007.
—Decided September 5, 2007.*

2007 WI App 233

(Also reported in 743 N.W.2d 448.)

† Petition to review denied 12/19/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martin E. Kohler* and *Craig S. Powell* of *Kohler & Hart, LLP*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. Dennis M. Gralinski appeals from an order denying his motion to suppress physical evidence seized during a search of his home, and statements that he made, on the basis that the statements were the fruits of the illegal search of his home. At issue is whether the affidavit supporting the search warrant provided probable cause to justify the search of Gralinski's home and computer. Gralinski argues that

the affidavit did not provide probable cause to believe that evidence of child pornography would be found in his home. In addition, he argues that the information contained in the affidavit was stale due to a lapse of two and one-half years. Lastly, he argues that the good-faith exception to uphold an invalid search warrant does not apply.

¶ 2. We conclude that the warrant-issuing commissioner had a substantial basis for finding that there was probable cause to issue the warrant to search Gralinski's home for the items specified in the warrant. Furthermore, under the circumstances presented here, we disagree with Gralinski's contention that the information contained within the supporting affidavit was stale.[1] Accordingly, we affirm the trial court's order denying his motion to suppress evidence.

## I. BACKGROUND.

¶ 3. The Bureau of Immigration and Customs Enforcement (ICE) is responsible for Operation Falcon, a nationwide investigation focusing on Internet child pornography crimes. In February 2003, the investigation revealed that a company known as Regpay owned and operated various members-only Internet websites containing images of what appeared to be children engaging in pornographic and sexually explicit conduct with other children and with adults.

¶ 4. In June 2003, federal agents seized Regpay's customer database, which contained records for each Regpay customer who purchased access to Regpay's child

---

[1] We are aware of a recent unpublished case, *State v. Park*, No. 2006AP1139–CR, unpublished slip op. (WI App Aug. 7, 2007), dealing with a search warrant of a computer for child pornography. The dispositive issue in *Park* requiring a remand was not raised in this case.

107

pornography websites. The records contained the purchaser's name, home address, e-mail address, credit card number, names of websites to which access was purchased, and the dates of purchase.

¶ 5. Regpay's records revealed that on March 9, 2003, Gralinski's credit card was used to purchase a membership to a Regpay website that included a free membership to a second website. In addition to containing Gralinski's name, credit card number, and the name of the website that the membership was purchased for, Regpay's records contained Gralinski's e-mail address and home address. When federal agents visited the websites to which Gralinski's membership afforded access, they determined that the sites "contained extensive collections of sexually explicit photographic and video images of what appear to be real children posing and/or engaged in pornographic activities with other children."

¶ 6. On June 3, 2005, a special agent with the Wisconsin Department of Justice reviewed ICE reports regarding the contents of the websites that Gralinski had received access to by way of the membership purchase and verified that the description of the images found at the websites constituted child pornography as legally defined in Wisconsin. On September 4, 2005, the special agent reviewed records obtained by ICE with documentation verifying Gralinski's e-mail address, home address, and telephone number.

¶ 7. On September 8, 2005, the special agent submitted a fifteen-page affidavit for a search warrant for Gralinski's home. The affidavit detailed the special agent's qualifications, provided information regarding Operation Falcon, explained how computers are used for child exploitation, and summarized the facts establishing probable cause, which included the details surrounding the seizure of Regpay's customer database

108

and the subsequent identification of Gralinski as a Regpay customer. In addition, the affidavit contained a description of the websites to which access was purchased with Gralinski's credit card.

¶ 8. The affidavit also provided the following with respect to computer usage in the context of child pornography:

> 10. Once an individual opens an image of child pornography on his computer or accesses such an image through the Internet, that image is saved in the computer's "cache." This allows investigators to review a history of the images opened/accessed by the user of the computer long after the image has been opened or accessed.
>
> . . . .
>
> 15. Based on his training and experience, your affiant knows that each time an individual views an online digital image, that image, or remnants of that image, are automatically stored in the hard-drive of the computer used to view the image. Your affiant knows that a forensic examination of such a hard-drive can identify and retrieve such images, including those of child pornography, even if those images have been deleted by the computer operator.
>
> . . . .
>
> 18. Based on his training and experience, your affiant knows that individuals who are involved with child pornography are unlikely to ever voluntarily dispose of the images they possess, as those images are viewed as prized and valuable materials.

¶ 9. Based on the information contained in the special agent's affidavit, a Milwaukee county court commissioner signed the warrant authorizing the

109

search of Gralinski's home, which was executed on September 13, 2005. At that time, investigators removed the hard drive from Gralinski's computer and discovered images from child pornographic websites.

¶ 10. On September 16, 2005, Gralinski was charged with five counts of possession of child pornography in violation of Wis. Stat. § 948.12(1m) (2003–04).[2] Gralinski moved to suppress the physical evidence seized and statements that he made. The trial court denied the motion, finding that the affidavit stated probable cause. In addition, the trial court concluded that the delay between March 2003 and September 2005 did not defeat probable cause. In light of its findings in support of probable cause, the trial court did not address the applicability of the good-faith exception.

¶ 11. We granted Gralinski's petition for interlocutory appeal, following the trial court's denial of his motion to suppress.

## II. Analysis.

### A. Probable Cause

¶ 12. Gralinski argues that the special agent's affidavit did not demonstrate probable cause for searching his home. Specifically, he contends that "the search warrant affidavit in the present case essentially stated only a single, facially non-incriminating fact supposedly connecting Gralinski to illegal activity—his credit card number was used in an online transaction to purchase a membership to a website later found to contain images of child pornography." Gralinski argues that it

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

110

was unreasonable for the trial court to infer that he conducted the credit card transaction given the significant amount of credit card fraud that exists.[3] He further argues that to get from the fact that Gralinski's credit card number was used "to a reasonable probability that Gralinski's home contained evidence of possession of child pornography in September 2005 requires the piling of inferences and near total reliance on the stated training and experience of the affiant in lieu of the requirement that a magistrate be presented with sufficient facts." We disagree with these contentions and conclude that the warrant-issuing commissioner had a substantial basis for concluding that there was probable cause to issue the warrant to search Gralinski's residence.

¶ 13. In reviewing a motion to suppress, we engage in a two-step inquiry. *State v. Pallone*, 2000 WI 77,

---

[3] Gralinski offers no evidence to support that he has been a victim of credit card fraud. Nevertheless, to bolster his argument regarding the surge of identity theft crimes, Gralinski cites *Will v. Hallock*, 546 U.S. 345 (2006), as an example of the danger of issuing a warrant under circumstances he contends are similar to those at issue here. There, information about Hallock's credit card was stolen and used to pay a subscription fee to a website containing child pornography. *Id.* at 347–48. Federal agents obtained a warrant to search the Hallocks' residence, and in seizing the Hallocks' computer equipment, damaged the disk drives to the extent that all of the stored data was lost, forcing the Hallocks out of business. *Id.* The issue before the United States Supreme Court in *Hallock* involved the Federal Tort Claims Act, not whether probable cause existed to search the Hallocks' residence, and as such, it provides no guidance on the issue presented to this court. Furthermore, unlike in *Hallock*, here, no evidence has been offered that would lead us to conclude that information about Gralinski's credit card was stolen.

¶ 27, 236 Wis. 2d 162, 613 N.W.2d 568. First, we apply a deferential standard to the trial court's findings of historical fact, and will "thus affirm the [trial] court's findings of fact, and inferences drawn from those facts, unless they are clearly erroneous. Second, we review the [trial] court's application of constitutional principles to the evidentiary facts. This second step presents a question of law that we review independently." *Id.*

■

¶ 14. WISCONSIN STAT. § 968.12(1) provides that a search warrant shall issue "if probable cause is shown." To support a determination that probable cause exists, the magistrate must be " 'apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched.' " *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991) (citations and one set of quotation marks omitted). In challenging the search warrant, Gralinski bears the burden of establishing insufficient probable cause. *See State v. Schaefer*, 2003 WI App 164, ¶ 5, 266 Wis. 2d 719, 668 N.W.2d 760.

■

¶ 15. "[E]very probable cause determination must be made on a case-by-case basis, looking at the totality of the circumstances." *State v. Multaler*, 2002 WI 35, ¶ 34, 252 Wis. 2d 54, 643 N.W.2d 437. To determine whether probable cause exists, the test is one of common sense. *State v. Ward*, 2000 WI 3, ¶ 23, 231 Wis. 2d 723, 604 N.W.2d 517.

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him,

including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The requirement that law enforcement officers obtain a search warrant was not designed to preclude them from receiving "the support of the usual inferences that reasonable individuals may draw from evidence." *Id.*, ¶ 28. However, inferences may be drawn only by "a neutral and detached magistrate . . . instead of a law enforcement officer who is engaged in the often competitive enterprise of ferreting out crime." *Id.* (citations and internal quotation marks omitted).

¶ 16. Our review of the warrant-issuing magistrate's determination of probable cause is deferential, and the magistrate's "determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *Higginbotham*, 162 Wis. 2d at 989. We take into account only the facts that were presented to the commissioner, *Ward*, 231 Wis. 2d 723, ¶ 26, and we recognize that "both the experience and special knowledge of police officers who are applying for search warrants are among the facts that the warrant-issuing court may consider," *Multaler*, 252 Wis. 2d 54, ¶ 43.

¶ 17. Gralinski relies on *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990), to support his argument that inferences "stacked" by the trial court and the magistrate to support the validity of the search warrant "amount[ed] to shoddy constitutional masonry." In *Weber*, the court concluded that the warrant issued was invalid because it sought items not based on probable

113

cause. *Id.* at 1343. Two years prior to when the affidavit was issued, Weber was sent advertising materials that were intercepted because they were "apparently" child pornography. *Id.* at 1340. As a result, Weber became the target of an investigation. *Id.* Approximately twenty-one months later, Weber responded to a government-generated advertisement for child pornography and ordered materials. *Id.* A warrant was then issued and executed shortly after a federal agent, dressed as a delivery person, delivered the materials that Weber ordered. *Id.* at 1341.

¶ 18. Weber did not deny that probable cause existed for the materials that he ordered in response to the government-generated advertisement. *Id.* at 1343. Instead, he argued that there was no probable cause to support the plethora of other materials sought in the affidavit, beyond the materials he ordered. *Id.* The court concluded that based on the information known to the federal agent when he prepared his affidavit, the number of inferences that would have to be drawn to support a finding of probable cause for the additional items specified in the affidavit made the search of Weber's residence unreasonable. *Id.* at 1345.

¶ 19. Gralinski's circumstances are different than those present in *Weber*, where other than the order placed by Weber at the government's solicitation, the only other fact suggesting that Weber may have had child pornography in his house on the day of the search was the advertising material that had been intercepted almost two years prior. *Id.* at 1345. Here, the affidavit detailed the fact that Gralinski's credit card had been used to purchase a membership that afforded him access to websites containing child pornography. In addition, the affidavit contained information relating to the special agent's experience and knowledge of indi-

114

viduals who are involved with child pornography and of the longevity of images viewed through the Internet to remain on a computer. *See Multaler*, 252 Wis. 2d 54, ¶ 43.

¶ 20. Thus, unlike in *Weber*, where the affidavit was not tailored to the information known about Weber, but rather described generally information "about different types of perverts who commit sex crimes against children," *id.*, 923 F.2d at 1345, in this case, the special agent's affidavit was tailored such that it was reasonable for the commissioner to conclude that it provided a substantial basis to find probable cause. In addition, the nature of the materials constituting child pornography in *Weber* (photographs) compared to the Internet images involved here, make *Weber* inapposite. *See generally United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006) (noting "that evidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material").

¶ 21. Similar to the facts at issue, *United States v. Gourde*, 440 F.3d 1065, 1066 (9th Cir. 2006) (en banc), *cert. denied*, 127 S. Ct. 578 (2006) (*Gourde II*), arose out of an appeal from a trial court's denial of Gourde's motion to suppress images of child pornography found on his personal computer. There, federal agents discovered that Gourde had a membership to a website containing child pornography, for which he had provided his home address, date of birth, and e-mail address. *Id.* at 1067–68. The affidavit in support of the warrant detailed the steps taken by Gourde to become a member (i.e., submitting his home address, e-mail address, credit card data, and consenting to have money deducted from his credit card every month, thus defeating any argument that Gourde became a member "by

accident"). *Id.* at 1068, 1070. In addition, the affidavit provided facts regarding the website and the images it offered, to which Gourde had access. *Id.* at 1068. Furthermore, the affidavit contained background information on computers and the traits of child pornography collectors. *Id.*

¶ 22. In concluding that this information was sufficient to support the magistrate's decision to issue a warrant, the *Gourde II* court noted:

> Given this triad of solid facts–the site had illegal images, Gourde intended to have and wanted access to these images, and these images were almost certainly retrievable from his computer if he had ever received or downloaded them–the only inference the magistrate judge needed to make to find probable cause was that there was a "fair probability" Gourde had, in fact, received or downloaded images.

*Id.* at 1071. The court further concluded that "[t]he details provided on the use of computers by child pornographers and the collector profile strengthen this inference . . . ." *Id.* at 1072. As a result, the *Gourde II* court refused Gourde's attempt to "elevate probable cause to a test of near certainty." *Id.* at 1072.

¶ 23. In his motion to suppress heard by the trial court, Gralinski relied on *United States v. Gourde*, 382 F.3d 1003 (9th Cir. 2004) (*Gourde I*), which he described as a case involving "circumstances similar to those of the present case."[4] In *Gourde I*, the court concluded that the affidavit failed to establish a fair probability

___

[4] A rehearing en banc was granted on July 14, 2005, *United States v. Gourde*, 416 F.3d 961 (9th Cir. 2005), and, as detailed above, the en banc court subsequently concluded that there was sufficient probable cause to support the issuance of a warrant to search Gourde's residence and computers, *United States v. Gourde*, 440 F.3d 1065, 1066 (9th Cir. 2006) (*Gourde II*).

that child pornography would be found on Gourde's computer and thus did not support a search warrant. *Id.* at 1013. However, now, in light of *Gourde II*, Gralinski attempts to distinguish his circumstances from those at issue in that case on the basis that the *Gourde* affidavit contained additional facts relating to the duration of Gourde's membership and based on the website's set up in *Gourde*, which required subscribers to pass through two pages that advertised and displayed child pornography. We are not persuaded by Gralinski's attempts to distinguish his circumstances from those found in a case that he previously relied on.

¶ 24. Here, like the court in *Gourde II*, we conclude that the use of a credit card issued to Gralinski to purchase a membership to websites containing child pornography, together with customer records confirming Gralinski's home address, e-mail address, and credit card information, result in the inference that there was a fair probability that Gralinski had, in fact, received or downloaded images. *See id.*, 440 F.3d at 1071. The details provided on the use of computers by individuals involved in child pornography found in the affidavit supporting the search of Gralinski's home strengthens this inference. *See id.* at 1072; *Ward*, 231 Wis. 2d 723, ¶ 28 (noting that " '[a]lthough the finding cannot be based on the affiant's suspicions and conclusions, the magistrate may make the usual inferences reasonable persons would draw from the facts presented' ") (citation omitted; alteration in *Ward*); *see also State v. Lindgren*, 2004 WI App 159, ¶¶ 18–20, 275 Wis. 2d 851, 687 N.W.2d 60 (holding that affiant "placed a plausible scenario, based on facts and experience, before the court," which provided sufficient justification for a search of the home of the defendant, who took nude photographs of a minor employee at his business).

¶ 25. In reaching this conclusion, we are mindful that "[t]he test is not whether the inference drawn is the *only* reasonable inference. The test is whether the inference drawn is *a* reasonable one." *See Ward*, 231 Wis. 2d 723, ¶ 30 (emphasis added). Accordingly, we conclude that Gralinski cannot avoid a finding that probable cause existed based on the slight chance that someone other than himself used the credit card to access the websites and further find that the warrant-issuing magistrate's determination of probable cause was reasonable.

## B. Stale Information

¶ 26. Gralinski next contends that the warrant was invalid because it was based on stale information such that no inference could be drawn that the items sought in the warrant would be located in his home two and one-half years after the membership to the Regpay website was purchased. He bases his argument on his contention that the affidavit did not demonstrate a pattern of actual and ongoing possession of child pornography by him. We disagree with Gralinski and conclude that the concept of staleness is not a bar to probable cause under the circumstances of this case.

¶ 27. In deciding whether probable cause is stale, "timeliness is not determined by a counting of the days or months between the occurrence of the facts relied upon and the issuance of the warrant." *State v. Ehnert*, 160 Wis. 2d 464, 469, 466 N.W.2d 237 (Ct. App. 1991). Even old information can support probable cause. *See*

*Multaler,* 252 Wis. 2d 54, ¶ 36 (noting the distinction between stale information and stale probable cause).

> Stale probable cause, so called, is probable cause that would have justified a warrant at some earlier moment that has already passed by the time the warrant is sought.

> There is not, however, any dispositive significance in the mere fact that some information offered to demonstrate probable cause may be called stale, in the sense that it concerns events that occurred well before the date of the application for the warrant. If such past fact contributes to an inference that probable cause exists at the time of the application, its age is no taint.

*State v. Moley,* 171 Wis. 2d 207, 213, 490 N.W.2d 764 (Ct. App. 1992) (citation omitted).

¶ 28. To determine whether probable cause is sufficient where a staleness challenge is raised requires a review "of the underlying circumstances, whether the activity is of a protracted or continuous nature, the nature of the criminal activity under investigation, and the nature of what is being sought." *Multaler,* 252 Wis. 2d 54, ¶ 37 (citing *Ehnert,* 160 Wis. 2d at 469–70). No single aforementioned consideration is dispositive given that, as noted above, probable cause determinations are made on a case-by-case basis, "looking at the totality of the circumstances." *Id.,* ¶ 34.

¶ 29. In *Multaler,* as part of their investigation of homicides that took place twenty years prior, police obtained a warrant to search the defendant's home for evidence of those crimes. *Id.,* ¶ 3. While executing the warrant, the police discovered computer disks containing child pornography. *Id.* The defendant moved to

suppress the disks arguing, in part, that the information in the affidavit supporting the warrant was stale because no inference could be drawn that evidence related to the murders would remain in his home twenty years after the murders occurred. *Id.*, ¶ 10. The *Multaler* court disagreed that the information was stale, and to support its conclusion that the affidavit provided probable cause, emphasized the "unusual tendency of serial homicide offenders, as stated in the affidavit, to collect and retain items that constitute evidence of their crimes." *Id.*, ¶ 40. In noting the variety of factors and circumstances to be considered in a staleness challenge, the *Multaler* court offered the following example: " 'The observation of a halfsmoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later.' " *Id.*, ¶ 37 (citations omitted).

¶ 30. Just as the court in *Multaler* found that the issue of staleness in that case depended, in part, upon the tendencies of serial killers to collect and retain items evidencing their crimes, *id.*, ¶ 40, here, the issue of staleness depends, in part, upon the tendencies of collectors of child pornography, as detailed in the special agent's affidavit. Gralinski does not contest the special agent's description of the habits of collectors of child pornography in the affidavit supporting the search warrant. In this regard, the affidavit provided "that individuals who are involved with child pornography are unlikely to ever voluntarily dispose of the images they possess, as those images are viewed as prized and valuable materials." Given the specific factual information obtained when Regpay's customer databases were seized that Gralinski's credit card had

been used to purchase a membership to sites containing child pornography, it was reasonable for the magistrate to infer that Gralinski downloaded visual child pornography from the websites to his computer.[5]

¶ 31. Because possession of child pornography on one's computer differs from possession of other contraband in the sense that the images remain even after they have been deleted, and, given the proclivity of pedophiles to retain this kind of information, as set forth in the affidavit supporting the request for the search warrant, there was a fair probability that Gralinski's computer had these images on it at the time the search warrant was issued and executed. *See Ward*, 231 Wis. 2d 723, ¶ 23. The affidavit explains that

---

[5] Gralinski argues that the affidavit "fails to lay a foundation sufficient to classify [him] as a collector, pedophile or any other person with a propensity to hoard child pornography." We note that the affidavit provides: "Your affiant believes Gralinski has demonstrated an interest in [child pornography] by meticulously providing detailed personal information, including his name, address, e-mail address, telephone number and credit card number to websites trafficking in child pornography." This statement, along with the entirety of the facts contained in the affidavit and the reasonable inferences that can be drawn from them, lead us to conclude that there was a sufficient foundation to justify the warrant-issuing magistrate's decision to issue a search warrant. *See State v. Schaefer*, 2003 WI App 164, ¶ 17, 266 Wis. 2d 719, 668 N.W.2d 760 (noting that the defendant's approach would have the court focus on individual parts of the affidavit at issue as opposed to having the court view the statements in their entirety allowing reasonable inferences to be drawn); *see generally State v. Higginbotham*, 162 Wis. 2d 978, 991, 471 N.W.2d 24 (1991) (we defer to the warrant-issuing magistrate because " '[r]easonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause' ") (citation omitted; alteration in *Higginbotham*).

"[o]nce an individual opens an image of child pornography on his computer or accesses such an image through the Internet, that image is saved in the computer's 'cache.' " The affidavit further states "that each time an individual views an online digital image, that image, or remnants of that image, are automatically stored in the hard-drive of the computer used to view the image . . . even if those images have been deleted by the computer operator." Thus, at the time the warrant issued and was executed, the probable cause to search Gralinski's residence was not stale.[6]

¶ 32. Gralinski offers one non-controlling case to support his contention that "the failure to demonstrate

[6] Gralinski argues that even if evidence can be retrieved from a computer in perpetuity, the staleness inquiry is still relevant to probable cause. He contends that the trial court erred in its finding that computers are repositories of potential evidence such that the information they contain is essentially timeless because such a finding abrogates the staleness doctrine in all child pornography cases. As evidenced by our analysis above, we agree that the staleness inquiry remains relevant to a probable cause determination despite the fact that the evidence at issue is found in a computer. We disagree, however, that viewing a computer as a repository of potential evidence will have the wide-scale effect of abrogating the staleness doctrine in all child pornography cases. Computers are frequently involved in effectuating numerous other crimes, and yet, computer storage and retention has not abrogated the staleness doctrine in other contexts. Consequently, we see no reason why computer storage would have such an effect in the context of child pornography. In light of the fact that a probable cause determination is made on a case-by-case basis looking at the totality of the circumstances, *State v. Multaler*, 2002 WI 35, 34, 37, 252 Wis. 2d 54, 643 N.W.2d 437, we anticipate that there will be situations where the facts are such that probable cause cannot be established even where downloaded images of child pornography are involved.

his *actual* and *ongoing* possession [of child pornography] renders the 30–month-old information stale." *See United States v. Greathouse*, 297 F. Supp. 2d 1264, 1272–73 (D. Or. 2003). Wisconsin caselaw, however, does not require such a showing. To the contrary, "whether the activity is of a protracted or continuous nature" is but one consideration to be taken into account in reviewing the totality of the circumstances. *Multaler*, 252 Wis. 2d 54, ¶¶ 34, 37. Moreover, there is no requirement that an affidavit conclusively demonstrate actual possession, as Gralinski argues; rather, the requirement is only that there be " 'an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched.' " *Higginbotham*, 162 Wis. 2d at 989 (citation omitted).

¶ 33. Considering all of the information in the affidavit and our deferential review of the magistrate's determination, we are satisfied that staleness is not a bar to probable cause. Accordingly, we affirm the trial court's denial of Gralinski's suppression motion.[7]

*By the Court.*—Order affirmed.

[7] Because we find the search warrant was supported by probable cause, we do not reach Gralinski's last argument that the good-faith exception to uphold an invalid search as articulated in *United States v. Leon*, 468 U.S. 897, 920–23 (1984), should not apply. *See also Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (unnecessary to decide non-dispositive issues).