PER CURIAM.
¶1 Aaron B. Reigle appeals a judgment, entered on his guilty plea, convicting him of possession of child pornography. He challenges the sufficiency of the search warrant leading to his arrest. We affirm.
¶2 The underlying events arose in 2014. On July 28, 2014, a Wisconsin Department of Justice Division of Criminal Investigation (DCI) special agent notified Walworth County Sheriff's Department Detective Michael Lambert that DCI received a "CyberTip" about twelve images of "possible" child pornography uploaded from an IP address in the Delavan, Wisconsin area. The agent received the tip from the National Center for Missing and Exploited Children (NCMEC), which, in turn, had received it from internet search provider (ISP) Yahoo! Inc.
¶3 Lambert viewed the CyberTip report and images on July 29. On August 18, he received a report from Yahoo confirming that ten images had been uploaded on April 24, two on June 2. The subpoenaed Charter Communications records identified Aaron Reigle as the subscriber associated with the IP address and included Reigle's City of Elkhorn residential address. On August 20, Lambert applied for a search warrant of Reigle's residence.
¶4 The affidavit in support of the warrant stated that Lambert is trained in computer forensics and investigations of child pornography and Internet crimes against children, explained his understanding and use of the terms "pubescent" and "prepubescent," and indicated that he viewed the twelve images.[1] It also explained how computers save files to hard drives and other media; that data associated with a file can remain on storage media and be forensically recoverable even years after a user deletes it; that such data can assist in establishing possession, receipt, and distribution of child pornography images even after a previously stored file is deleted and not specifically saved as a file on that particular computer; that, based on his training and his experience, Lambert was aware that individuals interested in child pornography or child exploitation tend to retain images or videos depicting such activity; and that, based on his prior contact with Charter, he believed the information Charter provided was reliable. Lambert concluded that his "investigation concerning the computer(s) identified at the ... IP address(es) [in the CyberTip] indicated that the computer(s) was/were possessing and contributing or offering to contribute to the distribution of child pornography on the date and time indicated." Relying on Lambert's affidavit, as the images were not included with the warrant application, the Honorable James Carlson granted the search warrant.
¶5 The search warrant was executed at Reigle's residence on September 10. Images of alleged child pornography were discovered on a computer located there. Reigle was charged with two counts of possession of child pornography.
¶6 Reigle moved to suppress the evidence obtained pursuant to the search warrant on two bases. First, he alleged a Franks/Mann[2] violation, contending that certain assertions in the supporting affidavit were made with an intentional or reckless disregard for the truth. He contended Lambert knew the described images did not depict sexually explicit conduct, and so did not constitute child pornography under Wisconsin law, yet affirmatively represented that they did. Reigle also contended the affidavit omitted stating that Lambert knew the images did not constitute child pornography under Wisconsin law and that NCMEC had not determined that the images were pornographic. Because of the assertions and omissions, he argued, the affidavit did not state probable cause.
¶7 Second, Reigle challenged the gap between the first reported uploading of the images in April 2014 and the execution of the search warrant in September. He contended the time lapse rendered the information in the supporting affidavit too stale to supply probable cause to believe that evidence of a crime still existed on his property when the warrant was obtained and executed.
¶8 The Honorable David M. Reddy presided over the hearing on the motion to suppress. Lambert did not testify. Although not involved in drafting the search warrant affidavit, Walworth County Sheriff's Department Detective Robert Craig, a certified forensic examiner, testified instead.
¶9 Craig testified about how law enforcement generally receives NCMEC CyberTips. He explained that: ISPs like Yahoo refer tips to NCMEC; all tips may not constitute illegal child pornography images; NCMEC first checks its database to determine if the images are of children already identified as victims of child exploitation; even if the child depicted is not known to NCMEC, it still forwards images it "feel[s] ... law enforcement needs to look at and do further investigation on" to determine if the images fit law enforcement's definition of child pornography or merely are "children erotica stuff."[3] Reigle argued that the twelve referred images at most constituted erotica and that NCMEC's referral by itself added nothing to the probable cause equation because, as Craig testified, NCMEC does not, or at least here did not, make a determination of pornography.
¶10 The suppression-motion court viewed the two images described in the affidavit. It observed that Image 3 depicted a young girl whose nipple was showing on bare, undeveloped breasts. When Reigle disputed whether a nipple was visible, the prosecutor zoomed in on the image and the court stated, "I do believe I see a nipple." As to Image 9, the court stated that it observed a young child with a "noticeable shot" of a nipple on undeveloped breasts. Reigle's counsel replied that it was a "distance shot" with no "[un]natural focus on it."[4]
¶11 Based on its conclusion that both images of the child showed a nipple on bare breasts, the circuit court determined that Lambert's affidavit was not made with an intentional or reckless disregard for the truth and that the "NCMEC tip add[ed] some credibility" to the affidavit. The court also rejected the staleness argument, found that sufficient probable cause supported issuing the warrant, and denied the motion to suppress the evidence seized through the warrant. Reigle pled guilty and now appeals.
¶12 When reviewing a motion to suppress, we uphold the circuit court's findings of fact unless they are clearly erroneous. State v. Sveum , 2010 WI 92, ¶16, 328 Wis. 2d 369, 787 N.W.2d 317. We independently determine whether those facts satisfy applicable constitutional provisions. See id. A search warrant may issue only upon probable cause under the totality of the circumstances. State v. DeSmidt , 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990). We review a warrant-issuing magistrate's conclusion that the affidavit in support of the order was sufficient to show probable cause with "great deference." State v. Higginbotham , 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991). "[T]hat determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." Id. "[T]he warrant judge may draw reasonable inferences from the evidence presented in the affidavit." State v. Multaler , 2002 WI 35, ¶8, 252 Wis. 2d 54, 643 N.W.2d 437. The test is not whether the inference drawn is the only reasonable inference but whether it is a reasonable one. State v. Ward , 2000 WI 3, ¶30, 231 Wis. 2d 723, 604 N.W.2d 517.
¶13 False statements of fact in an affidavit in support of a search warrant may void it. State v. Hoffman , 106 Wis. 2d 185, 201, 316 N.W.2d 143 (Ct. App. 1982). If the moving party substantiates that the misstatements were made knowingly and intentionally or with a reckless disregard for the truth, and if the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded. Franks v. Delaware , 438 U.S. 154, 155-56 (1978).
¶14 WISCONSIN STAT. § 948.12(1m) (2017-18)[5] prohibits the possession of child pornography. Child pornography includes a photograph or "other recording" of a child engaged in "sexually explicit conduct" provided that:
(a) The person knows that he or she possesses or has accessed the material.
(b) The person knows, or reasonably should know, that the material that is possessed or accessed contains depictions of sexually explicit conduct.
(c) The person knows or reasonably should know that the child depicted in the material who is engaged in sexually explicit conduct has not attained the age of 18 years.
Id. "Sexually explicit conduct" includes "actual or simulated ... [l]ewd exhibition of intimate parts." WIS. STAT. § 948.01(7)(e). "Intimate parts" include "the breast, buttock, anus, groin, scrotum, penis, vagina or pubic mound of a human being." WIS. STAT. § 939.22(19).
¶15 Although "lewd" is not defined in the statutes and case law has not settled on a precise description, State v. Lala , 2009 WI App 137, ¶11, 321 Wis. 2d 292, 773 N.W.2d 218, three concepts generally are included in defining the term, State v. Petrone , 161 Wis. 2d 530, 561, 468 N.W. 2d 676 (1991), overruled on other grounds by State v. Greve , 2004 WI 69, 272 Wis. 2d 444, 681 N.W. 2d 479. While the child need not be fully unclothed, see Lala , 321 Wis. 2d 292, ¶13, the image must visibly display the child's genitals or pubic area; the child must be posed as a sex object; and the image must have an "unnatural" or "unusual" focus on the child's genitalia, regardless of the child's intention to engage in sexual activity or whether the viewer or photographer is actually aroused, id.
¶16 Reigle contends Lambert's conclusion that "the computer(s) was/were possessing and contributing or offering to contribute to the distribution of child pornography on the date and time indicated" was a false statement, as the described images actually depicted mere nudity, not sexually explicit conduct by an underage person. See Petrone , 161 Wis. 2d at 561 (to constitute illegal child pornography under Wisconsin law, "mere nudity is not enough;" child must be posed as sex object, with "unnatural" focus on child's genitalia in a sexually suggestive manner).
¶17 He argues that neither image is lewd, as neither focuses unnaturally on the girl's bare breast or shows her engaged in sexually explicit conduct. He emphasizes that one is a distant shot of the girl lying on a bed holding a camera in one hand, smiling as if taking a "selfie," and the second depicts a distant side view of the same girl lying on her back on the bed, her knees curled up to her chest, "as if in a low-back stretch yoga pose."
¶18 The affidavit does not falsely describe what the images depict. In Image 3, the child, clad only in a pair of tight shorts, is the focal point. It shows her lying on a bed, her arms behind her knees pulling her legs up, such that they are tucked behind her head; her buttocks, although covered by the shorts, are elevated off the bed in the air. In Image 9, the girl again is the focal point and is lying on a bed. Her legs are spread, one extended, the other bent; her breast and nipple are exposed.
¶19 Reigle's more benign spin on the written descriptions notwithstanding, a warrant-issuing magistrate reviewing them reasonably could infer that the child-topless, nipples visible-was posed on a bed in a sexually explicit or lewd manner intended to elicit a sexual response. The circuit court's findings and its observation that, at least Image 3, did not describe "a Sears catalog picture," are not clearly erroneous.
¶20 We similarly disagree that Lambert's omission in the affidavit that he knew the two described images might not meet the statutory standard for child pornography or that NCMEC never represented that they matched anyone in its database of known child pornography amounted to a Mann violation. Those "omissions" were not necessary to the magistrate's fair determination of probable cause to issue the warrant. See State v. Mann , 123 Wis. 2d 375, 385-86, 367 N.W.2d 209 (1985). The quantum of evidence required to establish probable cause to issue a search warrant is less than that needed to bind a defendant over for trial or for a conviction. DeSmidt , 155 Wis. 2d at 132. Also, Lambert never suggested that NCMEC determined that the images did or did not constitute child pornography before it referred the tip to DCI. We see no Mann violation.
¶21 Reigle also complains that the circuit court erred in considering evidence from the suppression hearing-i.e., the testimony of Detective Craig-that was outside the affidavit. He is correct that, in reviewing whether probable cause existed for the issuance of a search warrant, a court is confined to the record that was before the judge who issued the warrant. DeSmidt , 155 Wis. 2d at 132. The person challenging the warrant bears the burden of demonstrating that the evidence presented to the warrant-issuing judge was clearly insufficient. Id.
¶22 Reigle implies that the mere fact of admitting the testimony of Craig, who was not involved in preparing the affidavit, about how a CyberTip gets from an ISP to law enforcement by itself invalidates the warrant. He also argues that the circuit court erred in concluding that Craig's testimony weighed in favor of finding probable cause. The question, however, is whether the evidence actually before the warrant-issuing judge was "clearly insufficient."
¶23 Besides the image descriptions, the affidavit also provided the following facts in support of issuing the search warrant:
13. Based on Affiant's training and experience, he is aware that historic law enforcement experience is that individuals who have an interest in child pornography or child sexual exploitation tend to retain any images or videos they obtain that depict such activity or maintain their interest in such depictions so that it can reasonably be expected that similar evidence of that sexual interest in children or interest in child sexual exploitation will be found in their computer(s) or other digital devices or storage media, or found in other forms in their private places. The possession, or apparent possession, of sexually explicit depictions of children, like those described in this affidavit, is consistent with a sexual interest in children or an interest in the sexual exploitation of children.
....
15. Affiant knows that [an] individual may hide or conceal computer media that contains child pornography files on it. The items may be hidden in area of the property not attached to the main living area such as detached garages and vehicles under control of the individual.
Craig's testimony mirrored this information. Thus, even if Judge Reddy, and we, entirely ignored Craig's testimony, Reigle has not shown that the facts within the four corners of the affidavit were clearly insufficient to issue the warrant.
¶24 Reigle next contends the affidavit was based on "stale" information such that no reasonable inference could be drawn that items sought in the warrant, such as digitally and electronically stored data, would be found on his property months after Yahoo referred the CyberTip.[6] Stale probable cause is that which "would have justified a warrant at some earlier moment that has already passed by the time the warrant is sought." State v. Moley , 171 Wis. 2d 207, 213, 490 N.W.2d 764, 766 (Ct. App. 1992) (citation omitted).
¶25 First, Lambert acted promptly, beginning his investigation within a day of receiving the tip from DCI. Second, "timeliness is not determined by a counting of the days or months between the occurrence of the facts relied upon and the issuance of the warrant." State v. Ehnert , 160 Wis. 2d 464, 469, 466 N.W.2d 237 (Ct. App. 1991). The warrant-issuing court may look to several factors in determining whether probable cause remains in the face of old information, including the nature of the underlying circumstances; whether the activity is of a protracted or continuous nature; the nature of the criminal activity being investigated; and the nature of the evidence sought. Multaler , 252 Wis. 2d 54, ¶37.
¶26 Third, " '[s]taleness' is highly relevant to the legality of a search for a perishable or consumable object, like cocaine, but rarely relevant when it is a computer file." United States v. Seiver , 692 F.3d 774, 777 (7th Cir. 2012). As the affidavit averred, even deleted computer file data may remain on a computer and be recoverable after a long time. See id.
¶27 Reigle acknowledges that fact and that law enforcement experience has shown that individuals with an interest in child pornography tend to retain such images making it reasonable to assume the images still would be present at the time of the search. He argues, however, that the affidavit provides no evidence that he had a "demonstrated" or ongoing interest in child pornography. Wisconsin case law does not require such a showing. See State v. Gralinski , 2007 WI App 233, ¶32, 306 Wis. 2d 101, 743 N.W.2d 448.
¶28 As noted, the affidavit stated that Lambert's own training and experience and that of law enforcement generally taught him that individuals with an interest in child pornography or child sexual exploitation tend to retain any images or videos they obtain that depict such activity. "Probable cause is not a technical, legalistic concept but a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." Higginbotham , 162 Wis. 2d at 989 (citation omitted). Based on the affidavit's description of the images, Lambert's experience, and the nature of the stored computer data, we conclude that, under these facts, staleness is not a bar to probable cause and Judge Carlson reasonably concluded that the warrant would lead to the discovery of child pornography.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The affidavit described two of the images:
a. Img.9.jpg - This image is that of what appears to be a female child under the age of 12. The child is lying on a bed dressed only in a tight fitting pair of red shorts with green trim. The child has her legs spread and her breasts exposed. The child is holding what appears to be a camera in front of her face.
b. Img.3.jpg - This image is that of what appears to be a female child under the age of 12. The child is lying on a bed dressed in only tight red shorts with green trim. The child is holding her legs with her arms behind her knees, her legs tipped back with her knees near her shoulders nearly touching the bed causing her butt to be lifted off the bed into the air. The child's breast is exposed. This child is holding what appears to be a camera in her hands.

See Franks v. Delaware , 438 U.S. 154 (1978), and State v. Mann , 123 Wis. 2d 375, 367 N.W.2d 209 (1985).

Craig described "child erotica" as "a little bit broader of an area where you have the girls meet up and make up in makeup, wearing lingerie, thong underwear, high heels, stuff like that, that kind of starts to sexualize the child."

The transcript says "natural." Whether misstated, misheard, or mistranscribed, logically and legally we are satisfied that "unnatural" was intended.

All references to the Wisconsin Statutes are to the 2017-18 version unless noted.

The first images were uploaded on April 24, 2014, and the search warrant was issued on September 10, 2014, a period of 139 days.